**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Chan Walker ZIELIE, Keith H. Gustafson, Thomas David Wilkerson, Robert Walter Govern, and Leon D. Mausser, Defendants-Appellants.**

No. 82–3167.

United States Court of Appeals, Eleventh Circuit.

June 25, 1984.

Rehearing and Rehearing En Banc Denied Aug. 6, 1984.

---

**1452**

Larry Mark Polsky, Daytona Beach, Fla., for Zielie.

Neal R. Lewis, Miami, Fla., for Gustafson.

Wayne E. Flowers, Jacksonville, Fla. (court-appointed), for Wilkerson.

Grafton B. Wilson, II, Robert Jennings, Gainesville, Fla., for Govern.

Harvey H. Starkoff, Cleveland, Ohio, for Mausser.

John E. Lawlor, III, Asst. U.S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before FAY, VANCE and HATCHETT, Circuit Judges.

FAY, Circuit Judge:

This case involves a group of individuals who associated together to profit from a large marijuana distribution network. Thirteen defendants, including the five appellants, were originally charged in an eighteen-count indictment.[1] Following a jury trial appellants were convicted of conspiring to violate and violating the racketeering statutes, 18 U.S.C. §§ 1961, 1962(a), (c) and (d), and 1963 (1980); the Travel Act, 18 U.S.C. §§ 1952(a)(3) and 2 (1980); the federal drug laws, 21 U.S.C. 841(a)(1) and 846 (1980) and 18 U.S.C. § 2 (1980); and the personal income tax laws, 18 U.S.C. § 371 (1980). Each appellant challenges his convictions on numerous grounds. After careful examination of each of their arguments, we affirm each appellant's conviction on each count charged in the indictment, with the exception of the conviction of Robert Govern on Count Twelve, which we vacate.

## I. THE FACTS

Robert Govern supervised a large network which distributed multi-ton quantities of marijuana from 1977 until 1982. Tony Fernandez was the head of the importation phase of the operation. Directly under Fernandez was appellant Govern, the head of the American distribution network, who purchased the marijuana from Fernandez and then resold it. Appellant Gustafson and Todd Reynolds worked directly for Govern. Tom Tucker, Steve Liberatore, Emmett Holcomb and appellant Zielie were some of the buyers of Govern's marijuana. These buyers, in turn, had their own employees in the network. Appellant Mausser accepted payments for the marijuana and was part of Govern's money laundering projects.

The evidence showed a highly structured and well-organized distribution network. There were numerous farms used as stash houses in Florida, Georgia and Texas. The money was kept and collected at Govern's Holatee Trail house in Florida. The marijuana was usually distributed in quantities ranging from 28,000 to 32,000 pounds.[2] There was a whole network of drivers. Deliveries and pick-ups could only be made between 8:00 a.m. and 5:00 p.m., Monday through Friday. Employees in the opera-

---

1. Thirteen people were charged on some or all of the counts in the original indictment. Appellants Govern, Gustafson, Mausser, Wilkerson and Zielie were found guilty by the jury on November 10, 1982. Codefendant Liberatore entered a plea of guilty during the first week of trial. The other defendants in the case either pled guilty prior to trial or remained fugitives.

2. The enterprise distributed vast amounts of marijuana. For example, in a five month period in 1978 approximately 150,000 pounds of marijuana passed through Govern's Loxahatchee house.

tion had fixed weekly salaries. By late 1978 the distribution network had expanded outside of Florida.

This successful enterprise generated huge amounts of cash. The evidence showed that Govern had a cache of at least $2.5 million. Govern, through an attorney, set up an off-shore corporation named Mexivest, N.V. It served as the conduit for channeling Govern's drug money into an apartment complex and a lumber business. Money was also laundered by many off-the-books and under-the-table transactions with the subcontractors involved in the construction of the apartment complex. From the purchase of the marijuana from Fernandez through the process of channeling the money into other investments, the evidence clearly indicated a group of individuals associated in fact for the purpose of making money through a coordinated and connected series of marijuana transactions.

## II. CHAN WALKER ZIELIE'S CLAIMS

### A. Speedy Trial Act

Chan Walker Zielie appeals the district court's refusal to dismiss his indictment on the ground that he was denied the right to a speedy trial in violation of the Speedy Trial Act, 18 U.S.C. §§ 3161–3174 (1976). Zielie was indicted in this case on April 13, 1982. On April 14, he made his first appearance before a judicial officer in the district where the indictment was returned. The only motions that he filed were a motion for a speedy trial and several motions to be excused from hearings involving his codefendants. The case was set for trial on June 21, 1982.

From April 22, 1982, through June 24, 1982, Zielie's codefendants filed various pretrial motions. On May 28, 1982, the government filed a motion for continuance of the trial date. Zielie objected to the motion and once more demanded a speedy trial. Several of his codefendants also filed motions to continue the trial and the district court granted the motions on June 8 to serve the ends of justice. The trial was reset for August 16, 1982. On August 12, 1982 Zielie filed a motion for discharge based upon a violation of the Speedy Trial

Act and the district judge denied the motion. Zielie's argument that his right to a speedy trial was violated is based on his inclusion in his computation of the time periods during which various pretrial motions of his codefendants were pending. Yet, by doing this he ignores both Congress' statutory intent and the law in this circuit.

Section 3161(c) of the Speedy Trial Act provides essentially a seventy-day period within which a defendant must be tried.

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs....

18 U.S.C. § 3161(c).

Yet in calculating the seventy day period, Section 3161(h) of the Act excludes time during which certain proceedings involving the defendant or a codefendant are pending. Among these exclusions are three periods of time relevant to this appeal:

> (h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>
> (1) Any period of delay resulting from other proceedings concerning the defendant including but not limited to—
>
> (F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;
>
> . . . . .
>
> (J) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the de-

fendant is actually under advisement by the court.

. . . . .

(7) A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.

■ The primary purpose of the Speedy Trial Act is to accelerate criminal trials. Congress enacted Section 3161(h)(7) because it recognized that multidefendant trials are desirable for prompt efficient disposition of criminal cases. It stressed that "the purpose of the provision is to make sure that [the Speedy Trial Act] does not alter the present rules on severance of codefendants by forcing the government to prosecute the first defendant separately or to be subject to a speedy trial dismissal motion under Section 3162." S.Rep. No. 93–1021, 93rd Cong., 2d Session (1974). For this reason the rule in this circuit is clear that a time exclusion that applies to one defendant is applicable to all codefendants. *United States v. Campbell,* 706 F.2d 1138 (11th Cir.1983); *United States v. Stafford,* 697 F.2d 1368 (11th Cir.1982); *United States v. Varella,* 692 F.2d 1352 (11th Cir. 1982); *United States v. Davis,* 679 F.2d 845 (11th Cir.1982). Even though Zielie may not have triggered any excludable periods of delay by the filing of his own motions, the periods of excludable delay generated by the motions of his codefendants are attributable to him under Section 3161(h)(7). There was no violation of Zielie's speedy trial rights in this case.

**B. Right to be Appointed as Co-Counsel.**

Zielie was represented by counsel in this case from the time of his first appearance. On August 12, 1982, four days prior to the beginning of the first trial, Zielie moved to have himself admitted as co-counsel in the case. He believed that most of the trial would relate only to his codefendant Govern, and he could, therefore, have his coun-

sel attend the trial only on the days that directly involved his case. He would act as his own counsel during the rest of the trial. The trial court denied his motion. He now asserts on appeal that he was denied his sixth amendment right to self-representation by the court's order.

■ It is settled law that a defendant has the right to represent himself in a criminal trial, *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); 28 U.S.C. § 1654. He also has the right to the assistance of counsel. *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). The concept of self-representation has been codified in 28 U.S.C. § 1654 (1980) which states that "[i]n all courts of the United States ... parties may plead and conduct their own case personally or by counsel...." However, this provision does not give the criminal defendant the right to a hybrid representation, *i.e.,* partly by counsel and partly by himself. Courts have consistently interpreted the statute as stating a defendant's rights in the disjunctive. *United States v. Shea,* 508 F.2d 82, 86 (5th Cir.), *cert. denied,* 423 U.S. 847, 96 S.Ct. 87, 46 L.Ed.2d 69 (1975); *United States v. Lang,* 527 F.2d 1264 (4th Cir.1975); *Duke v. United States,* 255 F.2d 721 (9th Cir.1958). The district court did not err in refusing to let Zielie appear as co-counsel.

**C. Opening Statement**

■ The second trial[3] in this case commenced on September 20, 1982. The district judge afforded counsel for all parties the opportunity to make an opening statement. Some of the parties chose to make their opening statements at that time. Zielie's counsel did not make his statement then but reserved the right to do so when he presented his case-in-chief. When it was time to present Zielie's case-in-chief his counsel advised the district judge that the only evidence that he would be presenting would be the testimony of co-defendant Govern. Since it quickly became apparent that Govern would invoke his fifth amend-

---

**3.** The first trial in this case began on August 16, 1982. It ended in a mistrial. See Section IV.

ment right against self-incrimination, and thus realistically Zielie would not be presenting any evidence, the district judge asked Zielie's counsel if he still wanted to make an opening statement. Zielie's counsel advised the court that he needed an opening statement to explain to the jury general points of law. The district judge then denied his request. Zielie asserts on appeal that the district court's ruling was erroneous and he should be granted a new trial. We disagree.

 The purpose of an opening statement "is to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole." *United States v. Dinitz,* 424 U.S. 600, 612, 96 S.Ct. 1075, 1082, 47 L.Ed.2d 267 (1976). The timing and making of opening statements is within the discretion of the trial judge. *See United States v. Salovitz,* 701 F.2d 17, 21 (2nd Cir.1983); *United States v. Hershenow,* 680 F.2d 847, 858 (1st Cir.1982). He can exclude irrelevant facts and stop argument if it occurs. *See United States v. Hershenow,* 680 F.2d at 858; *United States v. Freeman,* 514 F.2d 1184, 1192 (10th Cir. 1975). The Constitution requires that trials be fairly conducted and that "guaranteed rights of defendants be scrupulously respected." *McGautha v. California,* 402 U.S. 183, 221, 91 S.Ct. 1454, 1474, 28 L.Ed.2d 711 (1971). However, an opening statement by the defendant is not such a guaranteed right.[4] The making and timing of opening statements can be left constitutionally to the informed discretion of the trial judge. Although failure to afford a

defendant the opportunity to make an opening statement can constitute error, *United States v. Breedlove,* 576 F.2d 57, 60 (5th Cir.1978),[5] this is not such a case.

 The facts indicate that the government had already rested its case. Defense counsel advised the court that he would call no witnesses and introduce no evidence. Instead, he explained to the court that he needed an opening statement to explain to the jury the presumption of innocence and other basic points of law. Clearly, this is not the purpose of an opening statement. An opening statement gives counsel the opportunity to explain the case to the jury and to outline the proof. "[I]t is not an occasion for argument." *United States v. Dinitz,* 424 U.S. at 612, 96 S.Ct. at 1082. The district judge did not err in denying Zielie's counsel the opportunity of making an opening statement.

D. Zielie's Other Motions

Zielie was charged in two counts of the indictment. Count Seven charged that on or about January 13th and 14th, 1979, near Eustis, Florida, Zielie possessed marijuana with intent to distribute. Count Sixteen charged Zielie with conspiracy to possess and distribute marijuana.[6] Zielie filed two separate motions *in limine* and a motion for judgment of acquittal as to both counts. The district judge denied both motions *in limine* and granted the motion for acquittal as to Count Sixteen, the conspiracy count, but denied it as to Count Seven for possession with intent to distribute. Zielie challenges the district court's rulings. Finding no error in these rulings, we affirm Zielie's conviction.

---

4. The Supreme Court has limited the constitutional right to oral argument to final argument or summation. They have stated that "[t]here is no constitutional right to oral argument at any stage of the trial or appellate process." *Herring v. New York,* 422 U.S. 853, 863 n. 13, 95 S.Ct. 2550, 2555 n. 13, 45 L.Ed.2d 593 (1974).

5. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

6. Appellants Govern and Wilkerson also challenge their convictions on Count Sixteen arguing that the evidence introduced at trial established a number of separate conspiracies but not the single conspiracy charged in Count Sixteen. There is no merit to this argument. The trial judge properly found that the multiple conspiracy issue was an issue of fact to be resolved by the jury. *United States v. Lee,* 695 F.2d 515 (11th Cir.1983). It submitted it to the jury with an appropriate instruction. R. Vol. XXXVIII at 4745–46.

■ On August 25, 1982, Zielie filed a motion *in limine* seeking to preclude all non-expert witnesses from identifying as marijuana the brown-green, leafy material that he was charged with possessing and distributing. He asserted that none of the marijuana that he allegedly received and distributed had ever been seen, seized or tested by qualified law enforcement personnel or a qualified expert in the field of botany or forensic chemistry; therefore, no testimony identifying it as marijuana should be permitted. We find the court properly allowed Diego Morales and Todd Reynolds, two experienced marijuana dealers, to testify that the substance given to Zielie on or about January 13–14, 1979, was marijuana.

■ The law is quite clear that the introduction of a chemical analysis of the substance is not essential to conviction. *United States v. Graham*, 464 F.2d 1073 (5th Cir.1972). The uncorroborated testimony of a person who observed a defendant in possession of a controlled substance is sufficient if the person is familiar with the substance at issue. *See, e.g., United States v. Crisp*, 563 F.2d 1242, 1244 (5th Cir.1977); *United States v. Quesada*, 512 F.2d 1043, 1045 (5th Cir.), *cert. denied*, 423 U.S. 946, 96 S.Ct. 356, 46 L.Ed.2d 277 (1975). The narcotic nature of the substance need not be proved by direct evidence if the circumstantial evidence presented established, as it did here, that beyond a reasonable doubt the substance was marijuana. *See, e.g., United States v. Gregorio*, 497 F.2d 1253, 1263 (4th Cir. 1974); *United States v. Jones*, 480 F.2d 954, 960 n. 4 (5th Cir.1973), *cert. denied sub nom., Stockmar v. United States*, 414 U.S. 1071, 94 S.Ct. 582, 38 L.Ed.2d 476 (1974). The district judge properly denied this motion *in limine.*

■ Zielie also filed another motion *in limine* to exclude all evidence which related to drug transactions between him and government witness Morales that were distinct and separate from the transaction involved in Count Seven. The district judge

properly denied the motion and admitted the evidence of the uncharged transactions. It does not matter that these other transactions were not alleged as overt acts in the indictment. Courts have consistently held that "the government is not limited to overt acts pleaded in proving a conspiracy. It may show other acts of the conspirators occurring during the life of the conspiracy." *United States v. Perez*, 489 F.2d 51, 70 (5th Cir.), *cert. denied*, 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1973). *Accord, United States v. Ayres*, 434 F.2d 60 (5th Cir.1970), *cert. denied sub nom., Sidney v. United States*, 401 U.S. 938, 91 S.Ct. 930, 28 L.Ed.2d 217 (1971). In this case, because the evidence of the other transactions was offered to prove the conspiracy charged in Count Sixteen, its admission was proper.

■ At the close of the government's case-in-chief Zielie moved for acquittal on Counts Seven and Sixteen. The motion was granted for Count Sixteen, the conspiracy charge, but denied for Count Seven, the substantive charge of possession of marijuana with intent to distribute. Zielie argues that his acquittal on the conspiracy count necessarily must result in his acquittal on the substantive count. This argument is clearly wrong since it is not inconsistent for a court to acquit a defendant on a conspiracy count while convicting him on a substantive count. *See, e.g., United States v. Palmiotto*, 347 F.2d 223 (2d Cir. 1965); *United States v. Wilson*, 342 F.2d 43 (2d Cir.1965). The jury's verdict on Count Seven was supported by substantial evidence. *United States v. Malatesta*, 590 F.2d 1379 (5th Cir.) (*en banc*), *cert. denied*, 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979). The district judge properly ruled on these three motions.

## III. ROBERT WALTER GOVERN'S CLAIMS[7]

### A. Statements of Co-Conspirators

Govern challenges the admissibility at trial of out of court statements made by

---

**7.** Govern also challenged several evidentiary

rulings of the trial court and asserted that the

co-conspirators. In advancing this claim Govern argues that the district court erred in both the conduct of the *James* hearing and in the application of the "in further-ance of the conspiracy" requirement of Federal Rule of Evidence 801(d)(2)(E). We disagree.

■■■■ Rule 801(d)(2)(E) provides that a statement is not hearsay if it is offered against a party and is made "by a co-con-spirator of a party during the course and in furtherance of the conspiracy." Such statements are admissible, however, only if the government presents substantial, inde-pendent evidence showing: (1) that a con-spiracy existed, (2) that the defendant and declarant were both members of the con-spiracy, and (3) that the statement was made during the course of and in further-ance of the conspiracy. *United States v. James*, 590 F.2d 575, 581 (5th Cir.) (*en banc*), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). *Accord, Unit-ed States v. Yonn*, 702 F.2d 1341 (11th Cir.1983). The trial court's finding is a factual determination, *United States v. Perry*, 624 F.2d 29, 30 (5th Cir.1980), sub-ject to review under the clearly erroneous standard. *United States v. Bulman*, 667 F.2d 1374, 1379 (11th Cir.), *cert. denied*, 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982).

■■■ The court in this case held a *James* hearing. The judge allowed the prosecu-tion to present hearsay testimony. Govern asserts that the government cannot prove the conspiracy at a *James* hearing through any kind of hearsay. A reading of *James* clearly discloses the error in appellant's argument. The threshold determination concerning the admissibility of co-conspira-tor statements is made pursuant to Fed.R. Evid. 104(a). This rule provides that the court "is not bound by the Rules of Evi-dence except those with respect to privileg-es." Fed.R.Evid. 104(a). Thus hearsay

statements are admissible at the *James* hearing with one *caveat*—the court may not "rely upon the content of the very statement whose admissibility is at issue." *United States v. James*, 590 F.2d at 581. Thus, independent evidence, separate from the hearsay statements, must demonstrate the existence of a conspiracy.

■■■ There is extensive independent evidence in this record which sustains the district court's finding of a conspiracy. In reviewing a *James* hearing we may also consider, only against the particular de-fendant-declarant, the statements that he himself made to others. A defendant's own statements are admissible against him as party admissions under Fed.R.Evid. 801(d)(2)(A). *United States v. Hewitt*, 663 F.2d 1381, 1388 (11th Cir.1981). Thus, a defendant's own statements constitute in-dependent evidence for the purpose of ap-plying the *James* standards as to that par-ticular defendant. Most of the evidence at the *James* hearing in this case was testimo-ny by Diego Morales and John Patterson as to conversations with numerous people, in-cluding appellant Govern. The statements made by Govern in furtherance of the con-spiracy were properly admissible against him.

### B. Sufficiency of the Evidence

Govern argues that the evidence adduced at trial was insufficient to support his con-victions on Counts One through Six, Eight, Twelve, Seventeen and Eighteen and the district court erred in denying his motion for judgment of acquittal. After a careful review of the record we affirm the convic-tions of appellant Govern except for Count Twelve.

■■■ Challenges to the sufficiency of the evidence are measured by the standard set out in *United States v. Bell*, 678 F.2d 547 (5th Cir. Unit B) (*en banc*), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct.

government's prosecution of this case violated his due process rights. We find these issues do

not warrant discussion.

2398, 76 L.Ed.2d 638 (1983).[8] The court in *Bell* stated that:

> It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.

*Id.* at 549.

We must view the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and accept all reasonable inferences and credibility choices by the fact-finder, *United States v. Gonzalez,* 719 F.2d 1516, 1521–22 (11th Cir.1983).

After a careful review of the record we find the evidence presented was clearly sufficient to meet the government's burden and we affirm Govern's convictions on all Counts, except Count Twelve.[9] Count Twelve charged defendant Govern with possession of marijuana with intent to distribute near Eustis, Florida, during November, 1980. The evidence introduced at trial showed that Govern was involved with distribution of marijuana in South Florida but not near Eustis. R.Vol. XXIV at 1695–96. Govern's conviction as to Count Twelve is reversed and his sentence as to this count is vacated.

### C. Criminal Forfeiture

Count Two of the Indictment alleged that several parcels of real property, owned in whole or in part by Govern, afforded him a source of influence over the racketeering enterprise described in Count Two. These parcels were, therefore, subject to forfeiture pursuant to 18 U.S.C. § 1963(a)(2) (1980). Govern's mansion, the Loxahatchee house and the Holatee Trail house were forfeited to the United States pursuant to

the jury's verdict. Govern now challenges these forfeitures.

Under 18 U.S.C. § 1963(a) (1976), a defendant who

> violates any provision of Section 1962 ... shall forfeit to the United States (1) any interest he has acquired or maintained in violation of Section 1962, and (2) any interests in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which he has established, operated, controlled, conducted, or participated in the conduct of, in violation of Section 1962.

In order to have a violation of Section 1962 there must be (1) an enterprise which affects interstate or foreign commerce, (2) a defendant associated with the enterprise, (3) who participated in the conduct of the enterprise's affairs (4) through a pattern of racketeering activity. *United States v. Bright,* 630 F.2d 804, 829 (5th Cir.1980). Appellant asserts that there was no "legal entity" that constituted an enterprise and therefore the property should not have been forfeited to the government. We disagree.

In *United States v. Martino,* 681 F.2d 952 (5th Cir.1982) (*en banc*), the court carefully set forth the legislative history of the Organized Crime Control Act of 1970 and concluded that "Congress' express objective in RICO is to take the profit out of organized crime." *Id.* at 957 (footnote omitted). Congress mandated that "[t]he provisions of [RICO] shall be liberally construed to effectuate its remedial purposes." Organized Crime Control Act of 1970, Pub.L. No. 91–452, § 904(a), 84 Stat. 947 (1970). Based on its careful analysis of the legislative history and faced with a RICO enterprise that was "an association in fact rather than a legal entity," *id.* at 958, the court concluded that "reading an enterprise

---

**8.** The Eleventh Circuit has adopted as binding precedent decisions of Unit B of the former Fifth Circuit. *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982).

**9.** Government's counsel conceded this point to the court at oral argument.

limitation into § 1963(a)(1) renders that section surplusage." *Id.* at 955; Cf. *United States v. Cagnina,* 697 F.2d 915 (11th Cir. 1983), *cert. denied,* — U.S. —, 104 S.Ct. 175, 78 L.Ed.2d 157 (1983) (enterprise can include informal criminal network engaged in racketeering activity.).

■■■ Properties that are owned by a RICO participant and used by him to further the affairs of a RICO enterprise afford the owner/participant a source of influence over the enterprise and are thus subject to forfeiture under 18 U.S.C. § 1963(a)(2). The evidence in this case showed that Govern bought these properties during years when he had little reported income. These parcels were used almost exclusively as stash or money-counting houses. They clearly were Govern's contribution to the enterprise described in Count Two and properly forfeited to the United States.

## IV. DOUBLE JEOPARDY CLAIM

■■■ The original trial in this case began on August 16, 1982, in Ocala, Florida. The government started its case by calling various persons who testified as custodian of record or chain of custody witnesses. Several witnesses identified documentary evidence. The government's first fact witness was Diego Morales, a marijuana dealer. After many hours on the stand the prosecutor asked him on redirect who had accompanied him on a particular trip to one of the marijuana farms. He answered, "Leonel Fernandez. They killed him; can't testify." R.Vol. LII at 208. Immediately, all of the defendants moved for a mistrial which was granted by the district judge. Prior to the second trial all of the defendants moved for dismissal of the indictment on double jeopardy grounds. The district judge denied the motions which he characterized as "frivolous." R.Vol. X at 507–508. All of the appellants once more assert that the indictments against them should be dismissed on double jeopardy grounds. We affirm the district court's ruling.

■■■ The Double Jeopardy Clause of the Fifth Amendment protects a criminal

defendant from repeated prosecutions for the same offense. *United States v. Dinitz,* 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976). Where the trial is terminated over the objection of the defendant the test for lifting the double jeopardy bar to a second trial is the "manifest necessity" test first set out by the Supreme Court in *United States v. Perez,* 9 Wheat. 579, 580, 6 L.Ed. 165 (1824). The usual situation meeting this standard is the hung jury. But in the case of a mistrial declared at the request of a defendant, "there is a narrow exception to the rule that the Double Jeopardy Clause is no bar to retrial." *Oregon v. Kennedy,* 456 U.S. 667, 673, 102 S.Ct. 2083, 2088, 72 L.Ed.2d 416 (1982) (citations omitted).

■■■ A defendant's motion for a mistrial constitutes "a deliberate election on his part to forego his valued right to have his guilt or innocence determined before the first trier of fact." *United States v. Scott,* 437 U.S. 82, 93, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978). If prosecutorial error has occurred which warrants a mistrial, "[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error." *United States v. Dinitz,* 424 U.S. at 609, 96 S.Ct. at 1080. Thus, only in "those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial," *Oregon v. Kennedy,* 456 U.S. at 679, 102 S.Ct. at 2091, can the Double Jeopardy Clause bar the second trial.

Nowhere in this record can we find that the prosecutor intended to cause a mistrial and subvert the protection afforded to these defendants by the Double Jeopardy Clause. The government gained no advantage by the mistrial since the evidence adduced at the second trial was the same as that used in the first trial. *See Arizona v. Washington,* 434 U.S. 497, 508, 98 S.Ct. 824, 831, 54 L.Ed.2d 717 (1978); *United States v. Opager,* 616 F.2d 231, 234 (5th

Cir.1980). Nothing in this case indicates the level of conduct necessary for a finding of prosecutorial overreaching. *Compare United States v. Kessler,* 530 F.2d 1246 (5th Cir.1976) *with United States v. Broderick,* 425 F.Supp. 93 (S.D.Fla.1977). *But cf. United States v. Garza,* 603 F.2d 578 (5th Cir.1979). We find appellants' double jeopardy argument to be without merit.

## V. COMMUNICATION WITH JURY

 On November 8, 1982, after receiving its instructions, the jury retired to deliberate. Shortly thereafter, the jury sent a note to the court which stated: "May we please have a copy of the transcript?" Vol. XXXVIII at 4774. The court, without discussing it with any counsel, sent a note back which read: "Transcripts are not normally prepared during a trial, have not been prepared in this case; you must follow your collective recollection of the evidence." *Id.* Appellant Gustafson now alleges that this communication with the jury, without prior consultation with the defendant and his attorney denied Gustafson his right to be present at every stage of his trial. We disagree.

In *Rogers v. United States,* 422 U.S. 35, 38, 95 S.Ct. 2091, 2094, 45 L.Ed.2d 1 (1975), the Supreme Court stated the rule which governs this incident:

> In *Fillippon v. Albion Vein Slate Co.,* 250 U.S. 76 [39 S.Ct. 435, 63 L.Ed. 853] (1919), the Court observed 'that the orderly conduct of a trial by jury essential to the proper protection of the right to be heard, entitles the parties who attend for the purpose to be present in person or by counsel at all proceedings from the time the jury is impaneled until it is discharged after rendering the verdict.' [10]

However, the *Rogers* opinion clearly indicated that in some circumstances the error can be harmless. *Rogers v. United States,* 422 U.S. at 40, 95 S.Ct. at 2095. This is such a case.

Gustafson has not shown in what manner he was prejudiced. The district court's action was purely ministerial, advising the jury that no transcript was available. He has not challenged the accuracy of the district court's answer, nor could he. We by no means approve of any unjustified jury-court communication without notifying all counsel. But when the judge's answer to the jury's inquiry is distinctly responsive to the question; clearly states the law; and no prejudice is shown, the error is harmless. *United States v. McDuffie,* 542 F.2d 236, 241 (5th Cir.1976).

## VI. PROSECUTION'S CLOSING ARGUMENT

 Appellants Govern and Gustafson assert that the prosecutor, during rebuttal, made two separate comments which denied them a fair trial. These comments were:

> And if you want to show sympathy don't show it to Mr. Govern because we're picking on him. Show it to people who have suffered the effects of millions of pounds of marijuana. These are the people that need your sympathy.

R.Vol. XXXVII at 4713.

> These people are on trial, and Mr. Govern deserves to be found guilty for everything he did and I'm here to do justice, yes, sir, I am, and I'm also here, contrary to what Mr. Wilson said, to win. And the reason I want to win with respect to Mr. Govern, because if I win that's justice.

R.Vol. XXXVII at 4714.

The test for determining the existence of prosecutorial misconduct is whether the remarks were improper and prejudicially affected substantial rights of the defendants. *United States v. Phillips,* 664 F.2d 971, 1030 (5th Cir.1981) (Unit B), *cert. denied, sub nom. Meinster v. United States,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982); *United States v. Dorr,* 636 F.2d 117, 120 (5th Cir.1981).

In this case, the two remarks were neither improper nor of such a nature that they affected substantial rights of the defendants. Reference during closing argu-

---

**10.** This principle is also embodied in F.R. Crim.P. 43 which affords the defendant the right to be present at all stages of the trial, from arraignment to the return of the verdict.

ment to the drug problems of society and defendants' roles in such problems are not unduly prejudicial or excessively inflammatory. *See, e.g., United States v. Metz,* 608 F.2d 147, 158 (5th Cir.1979). The second comment falls safely on the legal side of the line between improper expression of the prosecutor's opinion and appropriate conclusions to be drawn from the evidence. *See United States v. Siegel,* 587 F.2d 721, 727 (5th Cir.1979). These remarks did not prejudicially affect substantial rights of the appellants and thus do not constitute reversible error.

## VII. REMARKS MADE BY MAUSSER'S COUNSEL

■ During closing argument counsel for defendant Mausser made the following comment to the jury:

> And he, the evidence we've proven, he's an honest and trustworthy man. He's one of the few who's testified. He stood up there and the prosecution worked him over. He was on that stand for a whole afternoon to defend his name.

R.Vol. XXXVII at 4639.

Counsel for codefendant Gustafson, joined by counsel for codefendant Wilkerson, made a motion for mistrial, asserting that it was an impermissible comment upon their client's failure to testify. Counsel for Mausser apologized for his remark by stating:

> Your honor, I was trying to bring out a point there and I guess—it was about the quantity of witnesses over quality, and I didn't even realize what I said and I didn't even realize what I said and I didn't know even know about it till afterwards, and I certainly respectfully say to the Court and to all the other defendants and lawyers and the prosecutor, that I did not mean it that way and I had no intention ever to go in that area.

R.Vol. XXXVII at 4642.

The court, thereafter, denied the motion because it concluded that any reference to the codefendants' failure to testify was unintentional and of such a character that the jury would not necessarily take it to be a comment on the codefendants' failure to

testify. R.Vol. XXXVII at 4646–4647. The district judge applied the proper standard and we affirm his denial of the motion for a mistrial.

■ There is no doubt that this circuit has a clearly established rule that convictions can be overturned where a comment on a defendant's exercise of his right to remain silent impairs the integrity of that right. This is true whether the comment is made by the prosecutor or by counsel for a codefendant. *See, United States v. Aguiar,* 610 F.2d 1296, 1302 (5th Cir.1980), *cert. denied,* 449 U.S. 827, 101 S.Ct. 91, 66 L.Ed.2d 31 (1981); *United States v. Kaplan,* 576 F.2d 598, 600 (5th Cir.1978), *cert. denied,* 439 U.S. 1078, 99 S.Ct. 858, 59 L.Ed.2d 47 (1979). However, not every statement is a comment on silence.

■ The standard for determining if there has been an impermissible comment upon a defendant's right not to testify at trial is "whether the statement was manifestly intended or was of such a character that a jury would naturally and necessarily take it to be a comment on the failure of an accused to testify." *United States v. Dearden,* 546 F.2d 622, 625 (5th Cir.), *cert. denied,* 434 U.S. 902, 98 S.Ct. 295, 54 L.Ed.2d 188 (1977); *United States v. Vera,* 701 F.2d 1349, 1362 (11th Cir.1983). In applying this test, the court must "look to the context in which the statement was made in order to determine the manifest intention which prompted it and its natural and necessary impact upon the jury." *United States v. Forrest,* 620 F.2d 446, 455 (5th Cir.1980), *quoting Samuels v. United States,* 398 F.2d 964, 967 (5th Cir.), *cert. denied,* 393 U.S. 1021, 89 S.Ct. 630, 21 L.Ed.2d 566 (1969).

Applying the appropriate standards to the statement in this case it is clear that it was not manifestly intended, nor would a jury rationally and necessarily construe it to be, a comment on silence. The statement was an attempt to bolster Mausser's testimony and to enhance his credibility. *See United States v. Macker,* 608 F.2d 223,

226–27 (5th Cir.1979). The Fifth Circuit has stated that:

A mere favorable comment upon the fact that one of several co-defendants testified does not involve the same potential for prejudice as an adverse comment by counsel upon the failure to testify of the other co-defendant.

*United States v. Hodges*, 502 F.2d 586, 587 (5th Cir.1974). The statement at issue here is a favorable comment on the fact that Mausser testified and not an adverse comment on Gustafson's or Wilkerson's failure to testify.

## VIII. RICO CONVICTIONS

▮▮▮ Appellants Govern, Gustafson and Wilkerson challenge the district court's denial of their motions for judgment of acquittal.[11] They claim that there was insufficient evidence at trial to support convictions under 18 U.S.C. §§ 1962(c) and (d) (1976) ("RICO").[12] Specifically they argue that the government failed to establish the existence of an "enterprise," within the meaning of the RICO statute, separate and apart from the underlying pattern of racketeering activity. Both the law and the facts of this case defeat their argument.

In *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), the Supreme Court held that a RICO enterprise could be engaged solely in illegitimate activity without fusing the enterprise with the pattern of racketeering activity. In reaching its decision the Court discussed the elements of RICO and the meaning of the word "enterprise" under the statute. It stated:

That a wholly criminal enterprise comes within the ambit of the statute does not mean that a 'pattern of racketeering activity' is an 'enterprise.' In order to secure a conviction under RICO, the Government must prove both the existence of an 'enterprise' and the connected 'pattern of racketeering activity.' The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute [citation omitted]. The

**11.** Gustafson and Govern also challenged the denial of the motions for judgment of acquittal on the RICO charges on two other grounds. First, they argue that marijuana is not a dangerous drug as that term is used in 18 U.S.C. § 1961(1) (1976). This argument has been made to this court before and rejected. *See, e.g., United States v. Phillips*, 664 F.2d 971, 1040 (5th Cir.1981) (Unit B), *cert. denied sub nom, Meinster v. United States*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). Secondly, appellant Govern asserts that the application of the RICO statute to this case is improper because the only acts of racketeering alleged in the indictment were possession and distribution of marijuana and interstate travel to promote the same. Again, the argument is without merit since 18 U.S.C. § 1961(1) states that trafficking in dangerous drugs is a racketeering activity. 18 U.S.C. § 1962(c) states that a RICO violation will lie when a person participates in or conducts a RICO enterprise's affairs through a pattern of racketeering. Therefore, once an enterprise has been established two Title 21 drug offenses would be sufficient to sustain a conviction under RICO.

**12.** 18 U.S.C. § 1962(c) provides:
It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(d) makes it unlawful for any person to conspire to violate § 1962(c). The statute provides that "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A "pattern of racketeering activity" requires at least two acts of "racketeering activity" committed within ten years of each other. 18 U.S.C. § 1961(5). "Racketeering activity" includes three broad categories of crimes: (a) any of several specified "act[s] or threat[s] ... chargeable under State law and punishable by imprisonment for more than one year", including, as relevant here, murder, attempted murder, arson, extortion, and dealing in narcotics, (b) any act which is indictable under any of several specified sections of 18 U.S.C., including § 472 (issuing counterfeit securities) and § 659 (felonious theft from interstate shipment), and (c) federal offenses involving narcotics or other dangerous drugs.

former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other.

452 U.S. at 583, 101 S.Ct. at 2528.

 Thus, in order to prove a substantive RICO violation the government must prove both an enterprise and a pattern of racketeering activity. *United States v. Cagnina,* 697 F.2d 915 (11th Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 175, 78 L.Ed.2d 157 (1983). A pattern of racketeering activity alone is not a crime under RICO. The gravamen of a RICO offense is conducting an enterprise through a pattern of racketeering activity. *United States v. Elliott,* 571 F.2d 880 (5th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978). This circuit has interpreted "enterprise" to mean "an informal criminal network engaged in racketeering activity...." *United States v. Cagnina,* 697 F.2d at 920. An enterprise need not be a "duly formed corporation that elects officers and hold annual meetings...." *United States v. Elliott,* 571 F.2d at 898. It can be a loose and informal "amoeba-like infra-structure that controls a secret criminal network...." *Id.* The precedent in this circuit clearly indicates that "a RICO enterprise exists where a group of persons associate, formally or informally, with the purpose of conducting illegal activity." *United States v. Hewes,* 729 F.2d 1302 at 1311 (11th Cir.1984).

 There was sufficient evidence in this case for the jury to find a RICO "enterprise" as that term has been interpreted by the Supreme Court and this circuit. The indictment in this case alleged that there was an enterprise consisting of a group of individuals associated in fact for the purpose of distributing marijuana. The evidence clearly showed that Govern would buy marijuana and redistribute it through the organization that he headed. This distribution group was an ongoing organization, possessing a well-defined structure, with continuity of membership and purpose. R.Vol. XXV at 1936. Testimony at trial showed a structure with extensive records. R.Vol. XXVII at 2567-68. There were fixed salaries, R.Vol. XXVII at 2563, and fixed hours of operation. R.Vol. XXVII at 2453. The evidence clearly indicated that appellants were members of a group of individuals associated in fact for the purpose of making money through a coordinated and connected series of marijuana transactions. Such evidence was sufficient to establish an enterprise under 18 U.S.C. § 1962(c) and (d).

## IX. MOTIONS TO SEVER

 Appellants Gustafson, Mausser and Wilkerson assert that the trial court erred in denying their respective motions to sever. All three claim error on the part of the trial court for its failure to sever Counts Seventeen and Eighteen, the money laundering counts, from the rest of the Indictment. Appellants Mausser and Wilkerson also claim that they should have been tried separately from all other codefendants in light of the small amount of evidence introduced against them versus the vast amounts introduced against all other codefendants. Since the appellants have not shown that they suffered any compelling prejudice as a result of the joint trial we affirm the district court's denial of the motions to sever.

 It is well settled that joinder under Rule 8(b) [13] is proper where an indictment charges multiple defendants with participation in a single conspiracy and also charges some but not all of the defendants with substantive counts arising out of the conspiracy. *United States v. Weinrich,* 586

13. Fed.R.Crim.P. 8(b) provides in pertinent part: Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.

F.2d 481, 495 (5th Cir.1978), *cert. denied,* 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979). The Fifth Circuit has stated as policy that "Rule 8 is to be broadly construed in favor of initial joinder." *United States v. Park,* 531 F.2d 754, 761 (5th Cir. 1976).

Yet, even if initial joinder is proper, severance may be granted in the discretion of the trial court under Rule 14 [14] if the district court determines prejudice will result from the joinder. *United States v. Walker,* 720 F.2d at 1533; *United States v. Berkowitz,* 662 F.2d 1127 (5th Cir.1981) (Unit B). In deciding a Rule 14 motion for severance the trial court must balance the right of a defendant to a fair trial against the public's interest in efficient and economic administration of justice. *United States v. Walker,* 720 F.2d 1527 (11th Cir. 1983); *United States v. Morrow,* 537 F.2d 120, 136 (5th Cir.1976), *cert. denied,* 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977). Severance will be granted only if a defendant can demonstrate that a joint trial will result in specific and compelling prejudice to the conduct of his defense. *United States v. Marszalkowski,* 669 F.2d 655, 660 (11th Cir.), *cert. denied sub nom., Brock v. United States,* 459 U.S. 906, 103 S.Ct. 208–09, 74 L.Ed.2d 167 (1982). Appellate courts are reluctant to second guess a trial court's refusal to grant a severance. *United States v. Horton,* 646 F.2d 181, 186 (5th Cir.1981). Therefore, our review is limited to determining if there was an abuse of discretion. *United States v. Plotke,* 725 F.2d 1303, 1309 (11th Cir.1984).

In order to demonstrate an abuse of discretion, "the defendant must establish that the joint trial subjected him not just to some prejudice, but to compelling prejudice against which the district court could not afford protection." *United States v. Harper,* 680 F.2d 731, 733 (11th Cir.), *cert. denied,* 459 U.S. 916, 103 S.Ct. 229, 74 L.Ed.2d 182 (1982). In determining prejudice we must consider whether the jury could "individualize each defendant in his relation to the mass," *Kotteakos v. United States,* 328 U.S. 750, 773, 66 S.Ct. 1239, 1252, 90 L.Ed. 1557 (1946), *i.e.,* whether the jury could "keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to him? If so, though the task is difficult, severance should not be granted." *United States v. Lane,* 584 F.2d 60, 64 (5th Cir. 1978), *quoting Tillman v. United States,* 406 F.2d 930, 935 (5th Cir.), *vacated in part,* 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969). A defendant does not suffer compelling prejudice simply because much of the evidence at trial is applicable only to his codefendants. *United States v. Berkowitz,* 662 F.2d at 1135 n. 8. Nothing in this record demonstrates compelling prejudice and the denials of the motions for severance were not an abuse of discretion.

The convictions and sentences imposed on appellants Zielie, Gustafson, Wilkerson and Mausser are AFFIRMED. The convictions of appellant Govern are AFFIRMED except for Count Twelve which is dismissed and the sentence on this Count is VACATED.

---

**14.** Fed.R.Crim.P. 14 provides in pertinent part: If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trial of counts, grant a severance of defendants or provide whatever other relief justice requires.