UNITED STATES of America,
Plaintiff-Appellee,

v.

William Thomas O'NEILL,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

James V. O'NEILL,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Alma Dale MALLARD,
Defendant-Appellant.

Nos. 84–5061, 84–5094 and 84–5149.

United States Court of Appeals,
Eleventh Circuit.

Aug. 2, 1985.

Stanley Marcus, Linda Collins-Hertz, Eileen M. O'Connor, David O. Leiwant, Asst. U.S. Attys., Miami, Fla., for U.S.

Harry M. Solomon, Miami, Fla., for James V. O'Neill.

Richard Hersch, Miami, Fla., for Alma Dale Mallard.

Before HENDERSON and CLARK, Circuit Judges, and TUTTLE, Senior Circuit Judge.

ALBERT J. HENDERSON, Circuit Judge:

William Thomas O'Neill, James V. O'Neill and Alma Dale Mallard appeal from their drug convictions in the United States District Court for the Southern District of Florida. We affirm the convictions but vacate Mallard's sentence and remand.

The appellants' convictions arise out of their efforts in 1979 and 1980 to smuggle methaqualone from Colombia into Florida by aircraft. In December, 1979, Mallard and Howard Pinckard, a pilot, air dropped several bundles of methaqualone tablets over Opa-Locka West Airport in south Florida. Local law enforcement officers, acting on a tip from a United States customs agent, discovered the contraband and at the time observed James O'Neill, William O'Neill and a third person ostensibly fishing in the drop zone.

Apparently undeterred by the unsuccessful initial attempt, Pinckard and the O'Neills made a series of test flights in preparation for a second effort. In January, 1980, Nicholas Dorich and Pinckard flew to Colombia to obtain additional drugs but crashed upon taking off from a primitive runway in South America.

One other incident in 1980 is relevant to this appeal. At some time during the year Pinckard and his wife were arrested in Mexico for stealing a plane belonging to William O'Neill and spent approximately six weeks in a Mexican prison. Neither William O'Neill nor Mallard answered

Law Offices of Halpern & Shenberg, Barry L. Halpern, John Lipinski, Miami, Fla., for William Thomas O'Neill.

Pinckard's call for assistance in effecting his release. At the end of the prison term the couple was handed over to the American authorities who charged Pinckard with stealing another airplane. In exchange for the dismissal of this charge and immunity from prosecution in the present case, Pinckard agreed to testify against the appellants.

On March 17, 1983, James O'Neill, William O'Neill, and Mallard were charged with conspiracy to import methaqualone in violation of 21 U.S.C. §§ 952(a), 963 (Count I); conspiracy to possess with intent to distribute methaqualone in violation of 21 U.S.C. §§ 841(a)(1), 846 (Count II); importation of methaqualone in violation of 21 U.S.C. §§ 952(a), 960(a)(1) (Count III); and possession with intent to distribute methaqualone in violation of 21 U.S.C. § 841(a)(1) (Count IV). On July 6, 1983 a superseding indictment was returned which made minor changes in the original indictment and added Counts V and VI, charging James and William O'Neill with attempted importation and attempted possession with intent to distribute methaqualone in violation of 21 U.S.C. §§ 952(a), 960(a)(1), 963 and 21 U.S.C. §§ 841(a)(1), 846, respectively.[1]

Although William O'Neill was tried separately, he, Mallard and James O'Neill were found guilty on Counts I through IV. All the defendants were acquitted on Counts V and VI at both trials. William O'Neill received a twenty-year prison sentence and two five-year special parole terms. After a hearing, Mallard was sentenced to fifteen years and five years special parole. James O'Neill was sentenced to five years in prison and received concurrent two-year and five-year special parole terms.

---

**1.** The superseding indictment named two other defendants. The disposition of those defendants is not relevant to this appeal.

**2.** The trial transcript reveals the following colloquy:

Q: When you were arrested in Durango, sir, didn't you have a plane in your possession?
A: Yes, I did.
Q: Whose plane was that, sir?
A: As far as I know, it was Bill O'Neill's.

## I. Trial of William O'Neill

William O'Neill first alleges that the district court improperly restricted his cross-examination of Pinckard by not allowing him to inquire about the circumstances of Pinckard's arrest in Mexico or about certain marijuana residue found on an airplane stolen by Pinckard. According to William O'Neill, Pinckard's arrest is pertinent to his bias against William because William failed to try to have him released from jail. The marijuana residue is allegedly relevant to impeach Pinckard by showing other criminal activities.

The district court's rulings on the scope of cross-examination will not be overturned absent abuse of discretion. *United States v. Rubin*, 733 F.2d 837, 841 (11th Cir.1984). The record discloses that the district court sustained the government's objection to a question asked Pinckard about whether a local sheriff had reported that traces of marijuana were found on the airplane. Record, vol. 5 at 211–12. The answer to this question was excludable as hearsay. William's attorney did not make any subsequent attempts to inquire about the marijuana residue. The record also shows that, despite William's contention to the contrary, the district court permitted cross-examination on the possible bias resulting from his failure to come to Pinckard's aid. *See* Record, vol. 5 at 200.[2] We conclude, therefore, that the district court did not abuse its discretion.

William O'Neill next alleges that the government improperly failed to disclose to the defense Pinckard's agreement with the prosecution that he would testify in exchange for immunity and the dismissal

---

Q: And you called Bill O'Neill, did you not, and asked him to help you get out of jail?
A: That is true.
Q: And he refused to help you, sir; didn't he?
. . . .
A: Yes, he did.
Q: Once he refused to help you, you said you'd get him back?
A: No, I didn't.
Record, vol. 5 at 200.

of certain theft charges. The government is obligated to disclose to the defense any benefits granted to prospective government witnesses in return for their testimony. *See generally Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). The failure to do so is not grounds for reversal where, as here, the information was disclosed during the trial and was before the jury. *See, e.g., United States v. Poitier,* 623 F.2d 1017, 1024 (5th Cir.1980).[3]

■ Finally, William O'Neill urges that the district court improperly denied his motion for a continuance so that he could secure the presence of three witnesses to explore the credibility issues raised by Pinckard's bargain with the prosecution and to prepare for cross-examination. Again, the district court's ruling on a motion for a continuance will be reversed only for abuse of discretion. *See United States v. Astling,* 733 F.2d 1446, 1452 (11th Cir. 1984). To prevail, the defendant must show prior due diligence to obtain the witness' presence, that substantially favorable testimony would have been forthcoming, that the witness was available and willing to testify and that the denial of the continuance caused material prejudice. *See United States v. Darby,* 744 F.2d 1508, 1521 n. 6 (11th Cir.1984).

■ In this case, William O'Neill does not allege material prejudice or that any of the witnesses were available or willing to testify. Consequently, we conclude that the district court did not abuse its discretion in denying this motion for a continuance.

## II. *Trial of Mallard and James O'Neill*

### A. *Motion to Strike Juror Smith*

■ During the initial jury selection session, Wayne S. Smith stated in response to questions that he felt he could be a fair juror and denied that he knew any reason

he could not be impartial. Although he was never asked if he had any friends in law enforcement, he was seated in the courtroom when other prospective jurors were asked that question, *see, e.g.,* Record, vol. 7 at 28 (12/7/83, 2:30 p.m. jury selection transcript), and subsequently answered in the negative an inquiry whether he knew of anything that would cause him to be biased against the defendants. *See id.* at 62.

At the continuation of jury selection a week later, after the defendants had exhausted their peremptory challenges, Smith informed the court for the first time that he had two friends who were narcotics agents and asked if any of the potential witnesses were similarly employed. Record, vol. 7 at 10 (12/13/83 jury selection transcript). The court indicated that at least one witness was an agent and read a list of all the witnesses to the jury. Smith then assured the court that his friendship with the two agents would not affect his qualifications to be a juror as long as they were not witnesses. *Id.* at 11. The court then denied the defendants' motion to strike and a motion to question Smith further.

Mallard and James O'Neill urge that the district court erred in 1) failing to grant the motion to strike for cause, 2) impairing their right to the knowing and intelligent use of peremptory challenges, and 3) failing to further inquire about the nature and extent of Smith's alleged bias.

Recently, in *McDonough Power Equipment Inc. v. Greenwood,* 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984), the Supreme Court elaborated on the standard for determining when juror responses during *voir dire* examination require a new trial. In *McDonough,* a products liability action to recover damages sustained by the plaintiff who was injured by a lawnmower, the plaintiff moved for a mistrial based on the failure of a juror to admit during *voir dire*

---

3. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as precedent all decisions of the former Fifth Cir- cuit Court of Appeals decided prior to October 1, 1981.

that his son had been in a serious accident. The Supreme Court instructed that

> to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of the trial.

*Id.*, 464 U.S. at —, 104 S.Ct. at 850, 78 L.Ed.2d at 671.

Although *McDonough* was a civil case, its test has been applied in criminal cases. *See United States v. Perkins*, 748 F.2d 1519, 1521–33 (11th Cir.1984). In this case, the appellants cannot meet the *McDonough* standard. They do not allege that Smith acted in bad faith and our review of the record reveals that he was never specifically asked if he had friends in law enforcement. Indeed, Smith's honesty is demonstrated by the fact that he volunteered the information before the trial. This is not a case of deliberate withholding of information. *See, e.g., United States v. Bynum*, 634 F.2d 768, 771 (4th Cir.1980).

The appellants also do not meet the second prong of the *McDonough* test because the district court did not err in refusing to strike Smith for cause. "A party who seeks a new trial because of nondisclosure by a juror during *voir dire* must show actual bias." *United States v. Tutt*, 704 F.2d 1567, 1569 (11th Cir.) (per curiam), *cert. denied*, — U.S. —, 104 S.Ct. 174, 78 L.Ed.2d 156 (1983). A trial court's determination that a juror is not biased will be reversed only for manifest abuse of discretion. *Id.* In view of the fact that Smith volunteered his possible partiality and assured the trial court in response to a specific question that his qualifications to be a juror would not be affected, we cannot say that the district court abused its discre-

tion. *Cf. Perkins*, 748 F.2d at 1533 (actual bias presumed).

The district court's alleged failure to further question Smith does not alter our holding that the court did not abuse its discretion in declining to strike Smith for cause. *See generally United States v. Nell*, 526 F.2d 1223, 1230 (5th Cir.1976) (trial court's failure to conduct adequate voir dire is grounds for a new trial). The district court has broad discretion in conducting *voir dire*. *See* Fed.R.Crim.P. 24; *United States v. Delval*, 600 F.2d 1098, 1102 (5th Cir. 1979). "The standard for evaluating the district court's exercise of its discretion is whether the means employed to test impartiality have created 'a reasonable assurance that prejudice would be discovered if present.'" *Id.* (quoting *Nell*, 526 F.2d at 1229). The central inquiry is whether the district judge's "overall examination, coupled with his charge to the jury, affords a party the protection sought." *United States v. Williams*, 573 F.2d 284, 287 (5th Cir.1978).

In this case, the district court extensively questioned all the jurors, including Smith, on a variety of issues concerning their ability to be fair and impartial. Although the court did not inquire in detail about juror Smith's acquaintance with two narcotics agents, Smith volunteered all the important factual information and, as noted earlier, assured the court, in response to a specific question, that his qualifications to be a juror would not be compromised. The district court adequately charged the jury that it was to decide the case without favor to either side. *See, e.g.,* Second Supplemental Record at 2 (charge of court). We also observe that defense counsel had an adequate opportunity to question Smith about any acquaintances he may have had among law enforcement officials. Under the circumstances, we hold that the district court did not abuse its discretion in declining to further question juror Smith.[4]

---

**4.** Although this Circuit has not yet applied the *McDonough* test to cases involving an allegation that the defendant's right to the knowing use of

preemptory challenges was impaired, the *Perkins* court noted that the standard is applicable to criminal cases in which the right to an impar-

### B. Comments on Failure to Testify

▪ James O'Neill and Mallard next assign as error three instances in which the district court allegedly permitted comments by the attorney for codefendant Dorich on their failure to testify at the trial. The incidents all occurred because Dorich's counsel sought to emphasize to the jury the fact that Dorich had not been given an opportunity to testify before the grand jury. O'Neill and Mallard urge that these comments implied that their failure to testify was tantamount to their acceptance of the grand jury indictment as true.

The first statement was made during jury selection:

> In grand juries, no defense lawyers, no cross-examination of witnesses, the defense never gets to tell their side of the story, right?

Record, vol. 7 at 70 (12/7/83, 2:30 p.m. jury *voir dire* transcript). Counsel for Dorich then commented during opening statements:

> Now, had they bothered to ask Mr. Dorich ... to go before the grand jury and/or had they bothered to ask to come and talk to him.
> [objection made]
> I understand that, Judge. I'm sorry. The evidence will show that Mr. Dorich did not ever get a chance to tell his story, but he will in this trial.

Record, vol. 8 at 31.

The final statement was made during Dorich's direct examination when he testified that he was never invited to go before the grand jury and that this was his first opportunity to tell his side of the story. First Supplemental Record at 82–83.

The standard for determining if there has been an impermissible comment on a defendant's right not to testify is whether the statement was manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify. *See United States v. Zielie*, 734 F.2d 1447, 1461 (11th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985). This circuit has held that the "mere favorable observation of the willingness of one of several co-defendants to testify does not constitute an impermissible comment on the failure of the other co-defendants to testify." *United States v. Vera*, 701 F.2d 1349, 1363 (11th Cir.1983). This situation " 'does not involve the same potential for prejudice as an adverse comment by counsel upon the failure to testify of the other co-defendants.' " *Zielie*, 734 F.2d at 1462 (quoting *United States v. Hodges*, 502 F.2d 586, 587 (5th Cir.1974)).

▪ The remarks here are comparable to those made in *Vera* and *Zielie*. In *Vera*, counsel stated that "the only person to come forward and tell you what was in [his] mind and what [he] said was [the defendant]." *Vera*, 701 F.2d at 1362. In *Zielie*, counsel stated that his client was "one of the few who's testified. He stood up there and the prosecution worked him over." *Zielie*, 734 F.2d at 1461. In fact, the statements here are less objectionable than these in *Vera* and *Zielie* because Dorich's counsel never asserted that Dorich was the "only person" or "one of the few" who testified. We conclude, therefore, the district court did not err in permitting the comments.

### C. Destruction of Photographs

▪ James O'Neill claims that he was deprived of due process of law because a Florida police officer, in 1983, destroyed certain photographs taken at the drop zone in Opa-Locka in 1979 on the erroneous belief that the case was on inactive status. Whether there was a due process violation

---

tial jury is at issue. *See Perkins*, 748 F.2d at 1531. Although the right of peremptory challenges is not constitutionally required, *see Frazier v. United States*, 335 U.S. 497, 505–06, 69 S.Ct. 201, 205–06, 93 L.Ed. 187, 195–96 (1948), it is a derivative of the constitutional right to an impartial jury. *See Swain v. Alabama*, 380 U.S. 202, 219–20, 85 S.Ct. 824, 835, 13 L.Ed.2d 759, 771–72 (1965); *United States v. Rucker*, 557 F.2d 1046, 1048 (4th Cir.1977). Accordingly, we hold that, under the circumstances of this case, the defendants' failure to meet the *McDonough* standard precludes the claim based on the right of peremptory challenges.

because of the destruction of evidence depends on "the materiality of the evidence, the likelihood of mistaken interpretation of it by government witnesses or the jury, and the reasons for its unavailability." *United States v. Vaughn*, 736 F.2d 665, 666 (11th Cir.1984) (per curiam). The defendant bears the burden of showing that the missing evidence would have been material and favorable. *Id.* Because O'Neill admits that the content of the photographs is unknown, he cannot demonstrate that the photographs would have been favorable to his defense. Consequently, we conclude that their destruction is not grounds for reversal.

### D. *Sentencing*

Mallard challenges the validity of his sentence because of alleged inaccuracies in a presentence investigation (PSI) report 1) that an informant told a DEA agent that Mallard had been involved in previous smuggling schemes, 2) that Mallard was well known to law enforcement officials and had been under investigation for some time, and 3) that certain Idaho and FAA law enforcement officials felt that Mallard believed he was above the law. According to Mallard, he was denied due process of law because the district court relied on this false information in sentencing him and failed to make adequate findings as to each controverted matter in the PSI report as required by Fed.R.Crim.P. 32(c)(3)(D).

---

**5.** The district court specifically commented on only one of the disputed items. In response to Mallard's objection to the information in the PSI report that Mallard had engaged in previous drug smuggling, the court stated:

> The Court: All right. I will amend the presentence investigation to indicate that the defendant denies that. He does deny that.
>
> . . . .
>
> Mr. Hersch: Will your Honor rely on this particular paragraph in your determination, or will your Honor just denying it be sufficient?
>
> The Court: It is a statement of a confidential informant concerning whom I know nothing. I am sure it is in a DEA record someplace. Okay. He denies it.

There is no need to address Mallard's constitutional claim because we hold that the district court failed to comply with the requirements of Fed.R.Crim.P. 32(c)(3)(D). That rule provides that

> [i]f the comments of the defendant and his counsel or testimony or other information introduced by them allege any factual inaccuracies in the presentence investigation report . . . the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. . . .

Fed.R.Crim.P. 32(c)(3)(D).

We have examined the record and conclude that Mallard adequately objected to the three items in the PSI report which are claimed to be false. *See, e.g.*, Record, vol. 3 at 266–71, vol. 7 at 14, 24–25, 32 (transcript of sentencing hearing). The district court, however, failed to make findings as to each controverted point or, alternatively, a determination that no finding was necessary because the disputed matter would not be taken into account. *See* Record, vol. 7 at 2–52 (transcript of sentencing hearing).[5] On remand, the district court is directed to resentence Mallard, making specific findings in accordance with Rule 32(c)(3)(D).[6]

AFFIRMED in part, REVERSED in part and REMANDED.

---

Record, vol. 7 at 25–27 (transcript of sentencing hearing). We do not read the court's ambiguous statements as constituting a finding under Rule 32.

**6.** Mallard also requests another hearing so that he may again attempt to rebut the allegedly false allegations. According to Mallard, he was not afforded an adequate opportunity to do so at the original sentencing hearing because the specific sources of certain contested information in the PSI report were not disclosed to him. However, Mallard had an adequate opportunity to subpoena all necessary witnesses and question them at the hearing. Accordingly, we find no merit to his request for a second hearing.