UNITED STATES of America,
Plaintiff-Appellant,

v.

S. Sam CALDWELL, Nancy Sue
Brown, Defendants-Appellees.

No. 84–8787.

United States Court of Appeals,
Eleventh Circuit.

Sept. 24, 1985.

See also, D.C., 594 F.Supp. 548.

Jere W. Morehead, Asst. U.S. Atty., Robert S. Stubbs, Atlanta, Ga., for U.S.

Theodore S. Worozbyt, William A. Morrison, Atlanta, Ga., for Caldwell.

Christopher A. Townley, Rossville, Ga., for Brown.

Before KRAVITCH and HATCHETT, Circuit Judges, and WRIGHT *, Senior Circuit Judge.

HATCHETT, Circuit Judge:

On this appeal, we review the district court's holding that at a *James* (*United States v. James*, 590 F.2d 575 (5th Cir. 1979)) hearing, the government failed to present substantial independent evidence to prove the existence of a conspiracy as charged against the appellees. We affirm in part and reverse in part.

---

* Honorable Eugene A. Wright, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

1. Except for Commissioner Caldwell, all of the appellees who were employees of the Department of Labor were prohibited from soliciting campaign contributions and prohibited from making campaign contributions except through the Internal Revenue Service check-off system. Whether this constitutes a violation of state law or any other law is irrelevant to the issues presented in this case.

## FACTS

Beginning in January of 1982, S. Sam Caldwell, one of the appellees and Commissioner of Labor for the state of Georgia, began planning his reelection campaign. In furtherance of this planning, Caldwell held two meetings in north Georgia with supervisors of the Department of Labor to discuss the financing of his campaign. According to the government, at these meetings Caldwell announced that funds would be obtained by holding appreciation receptions with tickets selling for $10.[1]

Eight receptions were held between February and June of 1982. Actively participating in Caldwell's campaign were Department of Labor area supervisor William B. Shanks, area supervisor Merlin H. Suggs, employment service manager Phillip J. Buffington, and employment security field deputy Nancy Sue Brown.

On February 6, 1984, a grand jury returned a 19-count indictment against appellees S. Sam Caldwell, Merlin H. Suggs, Phillip J. Buffington, Nancy Sue Brown, and William B. Shanks.[2] On September 27, 1984, the district court ordered that Counts III, IV, XIII, and XIV be tried separately.

Count III of the indictment charges that the appellees conspired with each other and other unindicted persons to commit extortion in violation of the Hobbs Act, 18 U.S.C.A. §§ 1951, 1952. The specific charge is that under color of right, the appellees and others unlawfully induced Department of Labor employees to contribute money to Caldwell's campaign.

Count IV charges that between October, 1980, and September, 1981, Caldwell and

---

2. On May 3, 1984, the district court severed Shanks from this trial; he later died on October 16, 1984. The indictment also named Thomas E. Byrd, Austin P. Coarsey, and John E. Flanigan. On July 11, 1984, the district court dismissed Byrd. On September 19, 1984, the district court severed Coarsey. Fed.R.Crim.P. 8(b). The charges against Flanigan in Counts I and V–XII are not the subject of this appeal.

Shanks conspired to commit extortion in violation of the Hobbs Act, 18 U.S.C.A. §§ 1951, 1952, by unlawfully inducing Department of Labor employees to contribute money to finance the refurbishing of their boat, the "Our Way." Counts XIII and XIV of the indictment are not relevant to the issues presently before the court.

Prior to trial, the district court conducted a *James* hearing on Counts III and IV. At the *James* hearing, the district court excluded much of the government's evidence on the ground that it constituted inadmissible coconspirators' statements.[3] At the conclusion of the *James* hearing, the district court held that absent the coconspirators' statements, the government failed to establish an agreement among the appellees and others to commit extortion as charged in Counts III and IV of the indictment. The government appeals that ruling pursuant to 18 U.S.C.A. § 3731 (West 1985) and *United States v. Perry*, 624 F.2d 29 (5th Cir.1980).

We decide in this case whether the district court correctly excluded coconspirators' statements and whether the government presented substantial independent evidence, absent coconspirators' statements, of a conspiracy to commit extortion, as charged in Counts III and IV of the indictment.

## DISCUSSION

■ In *James*, we established the rule that prior to the admission of a coconspirator's statement against a defendant in a criminal case under Fed.R.Evid. 801(d)(2)(E), the government must present "a sufficient showing, by independent evidence, of a conspiracy among one or more defendants and the declarant." *United States v. James*, 590 F.2d 575, 581 (5th Cir.1979) (quoting *United States v. Nixon*, 418 U.S. 683, 701, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039 (1974)). The purpose of the *James* hearing is "to protect the defendant

from the admission of prejudicial hearsay on the basis of threadbare evidence of conspiracy." *United States v. Grassi*, 616 F.2d 1295 (5th Cir.1980). The district court determines whether the admissibility standard has been satisfied. *James*, 590 F.2d at 581. "At issue is a factual determination, which includes both a quantitative and qualitative evaluation of the evidence." *United States v. Perry*, 624 F.2d 29, 30 (5th Cir.1980). On appeal, we review the district court's findings under the "clearly erroneous" standard. *United States v. Yonn*, 702 F.2d 1341, 1348 (11th Cir.1983).

The government generally sought to fulfill its *James* requirement by presenting as witnesses Department of Labor employees who testified that supervisors or area managers solicited funds for Caldwell's campaign by distributing tickets to receptions, by suggesting that contributions be made according to job positions, and by soliciting food and supplies for campaign receptions. Some of the victim testimony indicated that the supervisors or area managers suggested that it would be in the employee's best interest to make the contribution. In some cases, campaign aides were presented as witnesses to testify to their solicitation efforts.

## COUNT III

At the close of the *James* hearing, the district court concluded that although the government presented evidence which included appellees' discussions with several employees regarding campaign contributions, the evidence was inadmissible. The district court further held that the evidence admitted was of "disparate quality" and insufficient to prove the existence of a conspiracy to commit extortion.

The district court limited the admissibility of extra judicial coconspirators' statements to the declarants of the statements and held the statements inadmissible as against other coconspirators.

---

**3.** The district court did not put its rulings in writing. Rather, rulings were made in the midst of conversations with counsel. In some instances, rulings were attempted to be clarified by the posing and answering of hypotheticals. Trying to cull from the conversations between the court and counsel rulings on specific theories has been difficult.

The threshold determination concerning the admissibility of coconspirator statements is made pursuant to Fed.R.Evid. 104(a). This rule provides that the court 'is not bound by the rules of evidence except those with respect to privileges.' Fed.R.Evid. 104(a). Thus, hearsay statements are admissible at the *James* hearing with one *caveat*—the court may not 'rely upon the content of the very statement whose admissibility is at issue.' *United States v. James*, 590 F.2d at 581.

*United States v. Zielie*, 734 F.2d 1447, 1457 (11th Cir.1984).

The government argues that the proffered victim and supervisor testimony is admissible against all appellees because it is offered only to show that the statements were made, not for the truth of the matter asserted; therefore, the evidence is not hearsay. The government argues that it offered the testimony for two reasons, both unrelated to its use as coconspirator statements. First, the government asserts that the statements are admissible to show the victim employees' state of mind. Second, the government contends that the evidence demonstrates a pattern of common conduct by the Georgia Labor Department's supervisory personnel to solicit money from employees to fund Caldwell's campaign. Such common conduct allows the inference that the actors were acting pursuant to an agreement.[4]

The government relies on *United States v. Toney*, 605 F.2d 200 (5th Cir.1979). In *Toney*, the appellant participated in a mail fraud scheme using false and fraudulent representations to induce persons to purchase distributorships of Tradewinds Limited, Inc. (sound producing devices). Several victim distributors testified that Tradewinds failed to honor contractual obligations to purchase all unused products at the price paid by the distributor. Salesmen throughout the country delivered "remarkably similar" sales pitches. As chief executive and office manager, Toney directed and approved all levels of business opera-

tions. During the trial, the court admitted distributors' testimony recounting misrepresentations made by salesmen and other Tradewinds representatives. The evidence was introduced to establish a pattern of common conduct among the salesmen.

■ Because *Toney* did not involve a conspiracy charge, it is distinguishable from this case; it is a mail fraud case. The *James* problem is not present in a mail fraud case that does not allege a conspiracy. Also, in *Toney*, the government presented sufficient evidence of similar conduct to establish the existence of a mail fraud scheme. Because no coconspirators' statements were present in *Toney*, the statements required no *James* analysis prior to admission. In this case, however, the government sought to treat the coconspirators' statements as ordinary statements in evaluating their admissibility. Although the government advances a creative approach, it cannot overcome the fact that the testimony it presented comprised coconspirator statements, only admissible against the declarant defendant in the absence of independent evidence showing a conspiracy. Fed.R.Evid. 801(d)(2)(A); *Zielie*, 734 F.2d at 1457. *James* affords protection to a defendant from implication in a conspiracy through another defendant's or coconspirator's statements. The government has confused the distinction between the use of an alleged coconspirator's statement and the use of other extra judicial statements.

■ The government also contends that the excluded testimony was admissible to illustrate the verbal acts of the alleged coconspirators. "A person's acts can create an inference concerning what he has agreed to do, and, therefore, an agreement to join a criminal conspiracy may be inferred from the performance of acts that further its purpose." *United States v. Welch*, 656 F.2d 1039, 1056 (5th Cir.1981). "Proof of such agreement may rest upon inferences drawn from relevant and compe-

---

**4.** This portion of the government's argument is similar to one which would state: One may infer the existence of a conspiracy where everyone comes to an event dressed alike.

tent circumstantial evidence—ordinarily the acts and conducts of the alleged coconspirators themselves." *United States v. Morado,* 454 F.2d 167, 174 (5th Cir.), *cert. denied,* 406 U.S. 917, 92 S.Ct. 1767, 32 L.Ed.2d 116 (1972). Because the government's evidence of "verbal acts" was contained in alleged coconspirator's statements, it was inadmissible against all alleged coconspirators in the absence of other substantial independent evidence of a conspiracy. A coconspirator's statement is rendered no less a statement by calling it evidence of an act.

Alternatively, the government argues that even after the district court's limited admissibility rulings, substantial independent evidence of a conspiracy existed. The government argues that the testimony and circumstantial evidence should not be viewed in isolation; cumulatively, it argues, the evidence establishes an organized scheme between the appellees to commit extortion. "In determining whether there is a common design the nature and effect of the scheme is not to be judged by dismembering it but rather by looking at it as a whole." *United States v. Cole,* 704 F.2d 554, 557 (11th Cir.1983). The district court held that insubstantial evidence existed to show a conspiracy because the appellees' solicitations were of "disparate quality," not sufficiently identical.

The government contends that its production of circumstantial evidence satisfied its burden under *James.* "Because the essential nature of conspiracy is secrecy, such an agreement may be proved by circumstantial as well as direct evidence." *United States v. Browning,* 723 F.2d 1544, 1546 (11th Cir.1984). The government argues that the appellees' behavior necessarily originated from a common agreement and was comparable in character although each appellee tailored his solicitation efforts to his own style. The government asserts that this adequately demonstrates the appellees' common intent to commit extortion. Further, the government suggests that the fact that each appellee systematically solicited and collected funds from labor employees for the same purpose establishes a Hobbs Act conspiracy. This is true, the government argues, because none of the appellees were entitled to demand and receive money from Labor Department employees. *United States v. Sorrow,* 732 F.2d 176, 180 (11th Cir.1984).

■ Establishing the existence of a conspiracy is difficult. Although the law does not require that all coconspirators' participation be uniform, the evidence must illustrate a common knowledge and intent to participate in an agreement to achieve an illegal objective or a legal objective in an illegal manner. In this case the statements are only sufficient to implicate each declarant. Fed.R.Evid. 801(d)(2)(A); *Zielie,* 734 F.2d at 1457. "In reviewing a *James* hearing we may also consider, only against the particular defendant-declarant, the statements that he himself made to others. A defendant's own statements are admissible against him as party admissions under Fed. R.Evid. 801(d)(2)(A)." *Zielie,* 734 F.2d at 1457 (citing *United States v. Hewitt,* 663 F.2d 1381, 1388 (11th Cir.1981)). Thus, a defendant's own statements constitute independent evidence and satisfies the *James* standard as to that particular defendant. *Zielie,* 734 F.2d at 1457.

Evidence adduced during the hearing pertained to individual appellee's participation in the substantive crime and not in a conspiracy. Without significant independent evidence establishing the existence of a conspiracy, one appellee's solicitation activities cannot be imputed to the other appellees. In sum, we find that viewed independently, the evidence indicated that each appellee participated, to some extent, in soliciting money from labor employees to fund Caldwell's campaign. The government, however, failed to link the evidence to the existence of a common agreement or understanding between the appellees to commit extortion. The district court rulings are consistent with *James* which condemns the use of extra judicial coconspirator statements to establish the existence of a conspiracy. Since we cannot conclude that the district court's decision on Count

III was legally wrong or clearly erroneous, we affirm the district court's ruling on Count III.

## COUNT IV

█ Count IV charges that Caldwell and Shanks conspired to commit extortion under color of right by unlawfully inducing employees to contribute to the refurbishing of their yacht, the "Our Way." 18 U.S.C.A. §§ 1951, 1952 (West 1984). The government relied solely on Larry Mumford's testimony to establish substantial independent evidence of the conspiracy.

Mumford, a boat mechanic at a marina, worked on Caldwell's boat in 1979. In the fall of 1980, the "Our Way" sank while moored to the dock at Harriett's Bluff. Mumford participated in the effort to raise the boat, and in conversations with Caldwell and "others," Mumford learned that the boat was not insured.

Mumford testified that within two weeks after the boat was raised, he was in a conversation with Caldwell, Shanks, and Coarsey when they discussed their plans to repair the boat. Mumford testified as follows:

Question: Did the subject of where the funds were going to come from to fix the boat come up in that conversation?

Answer: Yes, sir.

Question: O.K. Would you relate your recollection of that conversation?

Answer: There were two—I guess Bill Shanks was to contact his area supervisor's or whatever and get them to donate money for restoring the boat.

Question: O.K.

Answer: Personally, I don't know who that would be.

Question: Was anybody else supposed to contact their office managers or field deputies, or anyone?

Answer: The way I understood it, all the area supervisors were supposed to contact the people in the field.

Question: Did you understand that from listening to the conversation among the three of them?

Answer: Yes.

Mumford's sister, Diane, was a field deputy for the Department of Labor. Mumford testified that Caldwell told him that Diane "was not supposed to have to contribute any money because of the fact I worked on the boat."

This evidence is sufficient to serve as independent evidence for the purpose of the *James* standards as to Caldwell. A defendant's own statements are admissible against him as party admissions under Fed. R.Evid. 801(d)(2)(A). "Thus, a defendant's own statements constitute independent evidence for the purpose of applying the *James* standards as to that particular defendant." *Zielie*, 734 F.2d at 1457. Caldwell stated his intent to cause others to actively solicit and collect funds from Labor Department employees to refurbish the boat. The district court erred in finding this evidence insufficient to meet the *James* standard as to Caldwell. Accordingly, the district court's ruling on Count IV is reversed.

## CONCLUSION

We affirm the district court's ruling that the government failed to present sufficient evidence to establish a conspiracy in Count III. We reverse the district court's ruling on Count IV and find that the evidence sufficiently establishes Caldwell's participation in a conspiracy to solicit funds from labor employees to refurbish the boat. Further proceedings in the district court will determine the existence and breadth of the Count IV conspiracy.

AFFIRMED in part, REVERSED in part.