826 F.2d 1061
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Marvin A. ELMORE, Defendant-Appellant.
 No. 86-5649
 United States Court of Appeals, Fourth Circuit.
 Argued May 8, 1987.
Decided Aug. 12, 1987.
 
 Daniel Joseph Burke, for appellant.
 Sandra Ann Strempel, Office of the United States Attorney (Henry E. Hudson, United States Attorney; James W. Chapman, Jr., Special Assistant United States Attorney, on brief), for appellee.
 Before JAMES DICKSON PHILLIPS and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Marvin Howard Elmore appeals his convictions for possession of marijuana in violation of 21 U.S.C. Sec. 844, possession of drug paraphernalia in violation of 18 U.S.C. Sec. 13, assimilating Va. Code Ann. Sec. 54-524.109:1 and possession of a gun in violation of 36 C.F.R. Sec. 50.49. We affirm.
 
 
 2
 On September 10, 1984, while patrolling the George Washington Memorial Parkway, a United States Park police officer came upon a parked van in which he found Elmore asleep behind the steering wheel. As he looked inside the van with a flashlight the officer saw a semi-automatic handgun on the engine cover. The officer immediately called for back-up and, after drawing his own gun, he removed the gun from the van.
 
 
 3
 The officer then arrested Elmore. As Elmore stepped from the van the officer noticed a bleeding puncture mark in his arm. Upon further investigation he found a small syringe on the ground beside the van and a matching needle cap and cup of water in the van. He also found a paper bag containing a plastic bag of marijuana. The officer seized these items which were later admitted into evidence at his bench trial.
 
 
 4
 Elmore contends first that there was insufficient evidence that the syringe found near his van was drug paraphernalia. He argues that because no controlled substances requiring the syringe for administration were found, no corroborating evidence supported the conclusion that the syringe was intended to be used for the unlawful purpose.
 
 
 5
 The gravamen of the misdemeanor created by Va. Code Ann. Sec. 54-524.109:1 is 'possession of controlled paraphernalia under circumstances which reasonably indicate an intention to use the paraphernalia for the purpose of illegally administering controlled drugs.' Murray v. Commonwealth, 225 Va. 13, 15-16, 300 S.E.2d 740, 742 (1983). Although the presence of controlled substances may be evidence of circumstances indicating intent to use the paraphernalia to administer drugs, Murray, 225 Va. at 16, 300 S.E.2d at 742, other evidence also may indicate such circumstances. The police officer saw on Elmore's arm a puncture wound that still bled. He testified that the manner in which Elmore had been passed out seemed consistent with being on drugs and that Elmore admitted to him that he was a drug addict. Moreover, Elmore had recently pled guilty in another proceeding to possession of heroin. The syringe lay near the van in a position indicating it could not have been put there by someone else. The syringe cap and cup were found inside the van. The officer had 13 years' experience as a park police officer and training in recognition of drug paraphernalia. Considered in the light most favorable to the government, the evidence was sufficient for the court to have concluded that the purpose of the syringe was illegal use of a controlled substance.
 
 
 6
 Elmore contends that the evidence was insufficient for his conviction of marijuana possession because the only testimony identifying the substance as marijuana was that of the park police officer who was not qualified to make the identification. A DEA laboratory report identifying the substance as marijuana was admitted over Elmore's objection that it was hearsay, but the court explicitly relied only on the officer's identification in finding the substance to be marijuana.
 
 
 7
 We find no error. Lay testimony and circumstantial evidence, including evidence of the physical appearance of the substance, may be sufficient to establish the identity of a controlled substance, without introduction of expert chemical analysis. United States v. Dolan, 544 F.2d 1219, 1221 (4th Cir. 1976). The officer saw and smelled the substance in the plastic bag and recognized it as marijuana. The field test confirmed it was marijuana. He testified that in his 13 years as a police officer he had seen marijuana many times. This testimony sufficiently established that the substance was marijuana. United States v. Zielie, 734 F.2d 1447, 1456 (11th Cir. 1984).
 
 
 8
 Concerning his conviction for possession of the gun, Elmore argues that because the handgun did not have a firing pin and was later determined to be inoperable even with a firing pin, the gun does not fall within the purview of 36 C.F.R. Sec. 50.49.[1] The term 'gun' is not defined in Part 50, but Elmore bolsters his argument with the chapter definitions in 36 C.F.R. Sec. 1.4. There the definition of 'weapon' includes 'a firearm, compressed gas or spring-powered pistol or rifle . . . or any other implement designed to discharge missiles . . .' 'Firearm' is defined as 'a loaded or unloaded pistol, rifle, shotgun or other weapon which is designed to, or may be readily converted to, expel a projectile by the ignition of a propellant.' Elmore argues that because the gun was incapable of firing or even being returned to firing capability, it was no longer designed to shoot and therefore was not a dangerous weapon.
 
 
 9
 We are not persuaded. We note first that the definitions of Section 1.4 do not apply to Part 50 which contains the provision Elmore was convicted of violating. See 36 C.F.R. Sec. 1.2(c). Hence we may turn to other sources to determine whether a gun that cannot be fired is a dangerous weapon within the meaning of 36 C.F.R. Sec. 50-49.
 
 
 10
 In McLaughlin v. United States, 106 S. Ct. 1677 (1986), the Supreme Court held that an unloaded gun was a dangerous weapon within the meaning of the federal bank robbery statute, 18 U.S.C. Sec. 2113(d).[2] The Court concluded the law may presume that a gun is always dangerous, even though not armed at a particular time, because it is an article that is characteristically dangerous; it is manufactured and sold for a dangerous use; and display of a gun instills fear in the average citizen, creating an immediate danger that a violent response will ensue. McLaughlin, 106 S. Ct. at 1678.
 
 
 11
 The same reasoning supports our conclusion that Elmore's handgun was a dangerous weapon for purposes of 36 C.F.R. Sec. 50.49. The officer's reaction to the gun illustrates that a gun instills fear. Upon seeing the gun, he immediately called for backup and reapproached the van with his own gun drawn. He could not know at the crucial moment that the gun did not represent a threat because it was not operable.
 
 
 12
 AFFIRMED.
 
 
 
 [1]
 36 C.F.R. Sec. 50.49 provides in part:
 (a) Carrying or possessing, while in any area covered by this part, a gun, airgun, bow and arrow, sling, dart, projectable thrower, knife with blade exceeding three inches in length, or other dangerous instrument or weapon is prohibited[.]
 
 
 [2]
 18 U.S.C. Sec. 2113(d) provides:
 Whoever, in committing, or in attempting to commit, [bank robbery as] defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.