**UNITED STATES of America, Appellee,**

v.

**Issiah BYNUM, a/k/a Moot James, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Raymond L. RICE, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Jesse G. WILLIAMS, Appellant.**

**Nos. 79–5171, 79–5266 and 79–5269.**

United States Court of Appeals,
Fourth Circuit.

Argued July 7, 1980.

Decided Nov. 26, 1980.

Stuart Jay Robinson, Baltimore, Md., for appellant Bynum.

Glenn L. Cook, Michael J. Travieso, Asst. U. S. Atty., Baltimore, Md. (Russell T. Baker, Jr., U. S. Atty., Baltimore, Md., on brief), for appellee.

Paul Mannes, Courtland K. Townsend, Jr., Gerald J. O'Brien, Rockville, Md. (Mannes, Meyers, Nadonley, Townsend & O'Brien, P.A., Rockville, Md., on brief), for appellant Rice.

A. J. D. Schmidt, Rockville, Md., for appellant Williams.

Before WINTER, BUTZNER and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

At a recent term of the United States District Court for the District of Maryland, Mr. John Turnipseed served as a venireman. Turnipseed was selected as a petit juror in two criminal cases in which guilty determinations were made. Shortly after the verdicts were returned, counsel for the defendants asserted to the judges[1] who had presided over the trials that Turnipseed had failed to disclose pertinent information during the *voir dire* examination. The convicted defendants from both trials argued before us that his nondisclosure raised questions about the impartiality of the jury and, thus, whether they were denied their right to a fair trial. Because of the interrelated nature of the contentions, we have chosen to consolidate into one opinion our disposition of both cases.

## I

In the first case, Issiah Bynum was convicted of conspiracy to violate the federal narcotics laws.[2] The second case in which Turnipseed was a member of the jury, serving as foreman as well, resulted in convictions against Raymond Rice and Jesse Williams for conspiracy[3] and for making a false statement to the government.[4] The essence of the case against Rice and Williams was that their construction companies, which qualified either as a small business or as a minority business enterprise pursuant to federal law and regulations, were used as fronts for another company not meeting the qualifications, thus enabling it to secure certain lucrative government contracts to which it was not entitled.

Bynum's counsel has asserted that, at the *voir dire* of the jury in the *Bynum* case, the defendant requested the court to ask the prospective jurors whether they had "a relative or close friend who has been either a defendant or victim of a crime?" The form of the question, as posed by Judge Miller, employed the terminology "person to whom [the prospective juror] felt particularly close" and not the language "relative or close friend." Whether there is a significant difference in the form of the question has not, however, been preserved for our review. We have been unable to locate in the record the supposed *voir dire* request, nor has Bynum's counsel, despite our indication of a wish that he do so, directed us to relevant language in the record. The Government, while identifying no record support, has stated in its brief: "The only difference in the voir dire question requested by the appellant and the question asked by the court was the use by the court of the word 'person' rather than 'relative' or friend." Since the burden is on the appellant to monitor preparation of the record on appeal, insofar as issues he wishes to raise are concerned, we accept the Government's version. The case should serve to alert counsel to their responsibilities, and to the serious potential adverse consequences if the record is not complete.

In our view there was no abuse of discretion on the part of the trial judge in asking whether "any person to whom you feel especially close . . . has ever been the victim of or ever been charged with or . . . convicted of any crime. . . ." The general phrase "person" covers relatives and friends.

Turnipseed, when the question was put to him did not respond affirmatively.

Several weeks later, at the *voir dire* of the jury in the trial of Rice and Williams, among the questions that Judge Kaufman asked the prospective jurors were:

> Is there anyone among you who has ever been the subject of any criminal

---

1. Judge James R. Miller, Jr. presided over the *Bynum* case while Judge Frank A. Kaufman presided over the *Rice* and *Williams* trial.

2. 21 U.S.C. § 846.

3. 18 U.S.C. § 371.

4. 18 U.S.C. § 1001.

investigation by any federal, state, or local or other agency? ... Is there anyone among you who has a close family member who has ever been so involved? ... Is there anyone among you who has a close family relative who has ever been convicted of a crime in any court, federal or state?

Again, Turnipseed remained silent.

After guilty verdicts were returned in both cases, it came to the courts' attention that Turnipseed in response to *voir dire* questions had failed to disclose that he had a brother who had been convicted of bank robbery,[5] a sister–in–law convicted of narcotics violations, and a nephew convicted of bank robbery. The defendants from both cases claim that if they had been aware of the criminal records of Turnipseed's relatives, they would have sought discharge of Turnipseed for cause; if that motion had been denied, they would have exercised available peremptory challenges to strike him from each jury.[6]

To explore Turnipseed's reasons for nondisclosure, both Judge Miller and Judge Kaufman conducted special hearings in which they questioned Turnipseed. The answers justified Judge Miller's conclusion that Turnipseed did not feel "especially close" to his brother, his nephew or his sister–in–law, and that consequently he had responded truthfully to the *voir dire* inquiry.

Judge Kaufman also questioned Turnipseed about the matter of his answers to the *voir dire* questions. When asked why he stayed seated when the court inquired if any jurors had relatives who had been convicted of a crime, he explained:

Why I stayed seated, like I said, the question was read by you and I trying to get it through my mind. Every time that comes up, it gets me kind of off a little bit. *And I try to forget that, put that*

*part out of my life. All at once I was hearing things that could bring it back, so I didn't move, I didn't say anything at the time. . . .*

*I said no then because I didn't know the seriousness of it, of the law in the courtroom. I mean, in other words, I had said no in other cases and I said no, but not really knowing that I could be involved in something like this today coming up.* (Emphasis added.)

Responding to the court's inquiry as to why he did not mention his nephew as a close relative, Turnipseed said:

Judge, like I say, I am a very proud man. I don't go for anything bad. I am not like that. I could quickly turn my head from anything like that, so I might have–this might have–this might have been the problem, why I am doing this. This is probably why I didn't come up and say anything about him or about my brother. Like my brother's wife, all of them in this crime, and I don't see them that often. If they come around, well so and so been around there, I don't care. I could care less when they went in crime doing something wrong like that.

## II

If the *Bynum* case stood alone we, in all probability, would not be justified in finding clearly erroneous the trial court's determination that Turnipseed did not feel "especially close" to his brother, his nephew, or his sister–in–law. However, the interrelationship of the *Bynum* case with the case of *Rice* and *Williams* adds a complication, the discussion of which we will defer until after we have examined the *Rice* and *Williams* case.

In *Rice* and *Williams*, the *voir dire* questions while covering the same subject matter as in *Bynum*, were different in a quite significant way: they inquired whether a

---

5. In his brief, Bynum's counsel has stated that Turnipseed's brother also was convicted of a narcotics offense. The record, however, provides no affirmative proof that such a conviction existed nor was there any indication that Turnipseed had been questioned about it.

6. Counsel for Rice and Williams set forth the information in a sworn affidavit. In the *Rice* and *Williams* case, the Government has accepted defense counsel's representation that they would have exercised a peremptory challenge to strike Turnipseed from the panel.

prospective juror had a close family relative who had been charged with or convicted of a crime. It may be reasonable, on the one hand, to say, as Turnipseed stated in *Bynum*, that one does not feel especially close to a relative, as close in degree of consanguinity as a brother if, as here, their paths had divided and they had seen little of one another for years. It is far more difficult, however, on the other hand, when the question is stated as it was in *Rice* and *Williams*, to state honestly that the brother is not a "close family relative," however little one has seen him, or however much one may feel alienated from him. In any event, we need not speculate on whether, in the abstract, the words "close family relative" conjured up in Turnipseed's mind his brother, nephew, or sister–in–law. The point is clearly delineated that he knew the question required him to reveal at the very least his brother's existence as a convicted felon. From his testimony, it is evident that Turnipseed decided to conceal the information. He did so for reasons of shame and embarrassment.

However much we may sympathize with Turnipseed's predicament, the episode demonstrated that for him the duty to tell the truth under oath took second place to preserving appearances for himself personally. It was, moreover, not simply that Turnipseed was untruthful. More to the point for our purposes were the doubts as to Turnipseed's objectivity and impartiality which remained concealed as a consequence of his nondisclosure. Rice and Williams were black. So was Turnipseed. On the jury he was in a racial minority. The circumstances created a substantial likelihood that Turnipseed might be either overly harsh[7] or overly lenient in his reaction to black defendants. Certainly when possible non–ob-

jectivity is secreted and compounded by the deliberate untruthfulness[8] of a potential juror's answer on *voir dire*, the result is deprivation of the defendant's rights to a fair trial. Turnipseed by his concealment impaired the right of Rice and Williams to exercise intelligently a peremptory challenge to remove a juror who was suspected of being partial.[9]

Hence the convictions of Rice and Williams must be reversed, and remanded for a new trial. As for the other grounds asserted, from a review of the record, the witness Summerall had an adequate factual basis for his opinion, and the evidence was clearly sufficient to support the verdict.

As for Bynum, we believe that, in the rather extraordinary circumstances presented, the *Rice* and *Williams* case should also be taken into account. When that is done there is a strong probability that nondisclosure again proceeded from a determination to conceal Turnipseed's "shame" or "embarrassment." There is, if anything, an even stronger likelihood of a non–objective reaction on Turnipseed's part which would lead him to be unduly harsh or unjustly lenient, bearing in mind the close conjunction between the crimes charged and the criminal record of Turnipseed's sister–in–law. Thus, while standing alone the conviction of Bynum would probably survive, viewed in the light of the disposition of the related case against Rice and Williams, and the similarity of the asserted errors, we believe justice will best be served by reversing and remanding for a new trial in the case of Bynum as well.

As for the other points raised on appeal, we are satisfied as to the correctness of Judge Miller's rulings.

---

**7.** We regard as reasonable the concern that a man in Mr. Turnipseed's situation, living an upright life himself, might be more than usually harsh on someone charged with crime. He might take an extreme position to satisfy both himself and the outside world that a relative's peccadilloes had not made him "soft on crime." It is not to be ignored that Turnipseed, a black, was a minority member of both juries.

**8.** The trial judge's finding that Turnipseed was not deliberately untruthful has been given full attention by us. Nevertheless, we are persuaded that the opposite finding is compelled by the record, and that accordingly the district court's determination was clearly erroneous.

**9.** *See United States v. Rucker*, 557 F.2d 1046, 1048–49 (4th Cir. 1977); *Photostat Corp. v. Ball*, 338 F.2d 783, 786–87 (10th Cir. 1964).

*JUDGMENT REVERSED; CASE REMANDED TO THE DISTRICT COURT FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.*