977 F.2d 594
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anna YI, Defendant-Appellant.
 No. 90-10560.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 24, 1992.
Decided Oct. 9, 1992.
 
 Before CANBY, REINHARDT and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Anna Yi contends that her conviction rests on evidence obtained in violation of the Fourth and Fifth Amendments. She also challenges the district court's refusal to dismiss a juror and to depart from the United States Sentencing Guidelines. We affirm.
 
 DISCUSSION
 A. Choice of Law
 
 3
 Yi argues that Hawaiian law governs the admissibility of evidence obtained by state officials. Our decision in United States v. Chavez-Vernaza, 844 F.2d 1368 (9th Cir.1987), forecloses this line of argument. In that case, we held that the admissibility of evidence obtained in violation of state law turns on whether a federal right was infringed, and not on the presence or absence of federal officers at the evidence-gathering stage. Id. at 1373. As long as the investigators' conduct conformed to federal law and the Constitution, the evidence obtained will be admissible in federal court regardless of Hawaiian law. See United States v. Little, 753 F.2d 1420, 1434-35 (9th Cir.1984) (tape recordings obtained in accord with federal law held admissible despite California statute prohibiting electronic eavesdropping without consent).
 
 B. Fourth Amendment Claims
 
 4
 Yi further contends that the officers' initial entry and search of her apartment violated her Fourth Amendment rights. The government counters that these warrantless actions were justified by: (1) the consent of resident manager Duane Komine, and (2) exigent circumstances and probable cause.
 
 1. Consent
 
 5
 According to the government, the officers relied on Komine's apparent authority to consent to a search of Yi's apartment. As a general rule, a landlord may not consent to a search of a dwelling rented to another. Chapman v. United States, 365 U.S. 610, 616-17 (1961). The government attempts to distinguish Chapman by relying upon United States v. Yarbrough, 852 F.2d 1522 (9th Cir.), cert. denied, 488 U.S. 866 (1988).
 
 
 6
 The government's reliance on Yarbrough is misplaced. In that case, a landlord rented a shack to a tenant in exchange for chores. Id. at 1534. On at least three weekends of the one-month tenancy, the landlord stayed with the tenant. Id. The landlord kept some of his belongings in the shack, used his key, and maintained complete access to the property. Id. In light of these facts, which were known to the police, we concluded that the landlord had both actual and apparent authority to consent to the search. Id.
 
 
 7
 Although Komine did have a key to Yi's residence, this case still significantly differs from Yarbrough. We deal here with Komine's relationship with one of many tenants in a multi-unit apartment building, and not with a landlord renting to and residing with a single tenant. The mere fact that Komine possessed a pass key reveals very little about his authority to consent to a search of any one of these apartments. In contrast to Yarbrough, the record here does not indicate that he stayed with Yi, kept belongings in her apartment, or maintained any kind of general access to her residence. Moreover, the officers could not have reasonably assumed that Komine had any special access to Yi's apartment, because they never questioned him about these considerations. Cf. United States v. Sledge, 650 F.2d 1075, 1076-78 (9th Cir.1981) (finding apparent authority because landlord stated that he had retaken possession of the unit because the tenants apparently had vacated). Accordingly, we reject the government's expansive reading of Yarbrough and hold that Komine lacked actual and apparent authority to consent under any standard of review. See Yarbrough, 852 F.2d at 1534; see also United States v. Sealey, 830 F.2d 1028, 1031 (9th Cir.1987) (leaving open whether the issue of apparent authority to consent is essentially factual and thus whether the standard of review should be de novo or for clear error).
 
 2. Exigent Circumstances and Probable Cause
 
 8
 The government contends that probable cause and exigent circumstances justified the officers' actions. In assessing whether the police had probable cause to search, we consider whether the facts and circumstances known to the officers would cause a prudent person to believe that criminal activity was afoot. United States v. Greene, 783 F.2d 1364, 1367 (9th Cir.), cert. denied, 476 U.S. 1185 (1986). In this case, we conclude that the ringing burglar alarm and absence of any legitimate explanation for it, after both the manager and the police had knocked on the door, would cause a prudent person to believe that criminal activity was afoot.
 
 
 9
 We next consider whether exigent circumstances justified the warrantless entry. Exigent circumstances are "those circumstances that would cause a reasonable person to believe that entry (or other relevant prompt action) was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequences improperly frustrating legitimate law enforcement efforts." United States v. McConney, 728 F.2d 1195, 1199 (9th Cir.) (en banc), cert. denied, 469 U.S. 824 (1984).
 
 
 10
 We conclude that exigent circumstances existed under the facts of this case. A burglar alarm was sounding; the landlord had knocked and received no response; the police had later done the same. A reasonable officer could well believe either that a burglar was in the apartment, a resident was in the apartment and had suffered harm, or both. The need to prevent "harm to others," id., justified the officers' in entering the apartment when the landlord unlocked the door for them. Indeed, one might well conclude that one of the purposes of a burglar alarm is to precipitate just such an entry. We conclude, therefore, that the district court did not err in ruling the entry lawful.
 
 3. Basis for Warrant
 
 11
 Our decision that the initial entry was justified disposes of Yi's contention that the search warrant was based on tainted evidence. There is no other viable ground for challenging the issuance of the warrant; the affidavit reciting the events preceding and immediately following the entry clearly established probable cause.
 
 4. Scope of the Search
 
 12
 We now turn to Yi's claim that the warrant does not comply with the particularity requirement. We also must address the related questions of whether the officers substantially exceeded the bounds of the warrant, and whether the duration of the seizure was unreasonable.
 
 
 13
 The warrant authorized the officers to search for:
 
 
 14
 1. Methamphetamine and other controlled substances, narcotics paraphernalia commonly associated with the storage, use and sale of methamphetamine, consisting of, and including, but not limited to pipes, sifters, heat sealers, baggies, scales and other weighing devices, photographs to include records of narcotics transactions;
 
 
 15
 2. Articles of personal property tending to establish the identity of persons in control of premises, containers, or storage areas where controlled substances may be found, consisting of, and including but not limited to rent receipts, used mail receipts, utility bills, keys and other documentation.
 
 
 16
 Yi argues that the warrant fails to describe with particularly the items to be seized, but we are not persuaded. The language in the warrant itself is reasonably specific. Moreover, it incorporates Officer Nakapaahu's detailed affidavit, which describes the items observed and their location in the apartment. In view of these considerations, we hold that the warrant limits the officers' discretion and is not overbroad. See United States v. Whitworth, 856 F.2d 1268, 1280 (9th Cir.1988) (viewed in context of all the provisions, a catch-all provision did not render the search warrant overbroad), cert. denied, 489 U.S. 1084 (1989); see also United States v. Whitten, 706 F.2d 1000, 1009 (9th Cir.1983) (upholding warrant authorizing seizure of items indicating ownership or control of premises), cert. denied, 465 U.S. 1100 (1984).
 
 
 17
 Yi alternatively maintains that the officers deviated from the warrant's terms with respect to several items, and that all the seized evidence therefore must be suppressed. As Yi correctly points out, a search must be limited to the terms of the warrant. Bivens v. Six Unknown Named Agents, 403 U.S. 388, 394 n. 7 (1971). But even if some of the items seized are beyond the warrant's scope, the district court need not suppress all the items unless the officers acted in flagrant disregard of its terms. United States v. Crozier, 777 F.2d 1376, 1381 (9th Cir.1985). We review the district court's assessment for clear error. Id. at 1380.
 
 
 18
 The record indicates that the officers recovered more than fifty items from Yi's apartment. Improperly seized items included: ammunition, a gun, and revolver grips.[1] Yi argues that the seizure of these items reflects a disregard for the warrant's terms. But because the majority of the items seized clearly fell within the warrant's scope, this disregard was not flagrant. See id. at 1381 (unauthorized seizure of personal letters and bank statements did not invalidate seizure of documents covered by warrant); Whitten, 706 F.2d at 1009-10 (declining to suppress all evidence despite indiscriminate seizure of more than one thousand photographs). Accordingly, the district court did not clearly err by suppressing only the nonconforming items.
 
 
 19
 Finally, we conclude that the duration of the seizure in this case did not render it unreasonable. It commenced shortly after midnight, and concluded with the warranted search in the late afternoon. For most of the intervening hours "it is reasonable to assume that judicial officers are not as readily available for consideration of warrant requests." Segura v. United States, 468 U.S. 796, 813 (1984) (upholding seizure despite nineteen-hour delay in obtaining warrant). We also may reasonably assume that Nakapaahu spent the time preparing his affidavit, see United States v. Holzman, 871 F.2d 1496, 1507 (9th Cir.1989), which he presented to the judicial officer at approximately 2 p.m. There is no evidence to suggest that the officer purposely delayed this process in the exercise of bad faith. See Segura, 468 U.S. at 812.
 
 C. Fifth Amendment Claims
 
 20
 Yi also contends that the district court erroneously refused to suppress statements made during detentions on August 18 and September 13, 1990. We reject this contention.
 
 1. Statements to Police Officers
 
 21
 Yi maintains that Officer Jon Thomas violated her Miranda rights by interrogating her without the required warnings. Miranda protections apply whenever the state obtains statements during a custodial interrogation. Miranda v. Arizona, 384 U.S. 436, 444 (1966). Both sides agree that interrogation[2] occurred; the sole dispute is whether Yi was in custody at the time she encountered the officer.
 
 
 22
 Custody occurs either upon formal arrest or when a suspect is deprived of her freedom of action in any significant way. See Miranda, 384 U.S. at 444. We must assess whether a reasonable person in Yi's position would have understood herself to be in custody. Berkemer v. McCarty, 468 U.S. 420, 442 (1984). Absent clear error, we will uphold the district court's custody determination. United States v. Eide, 875 F.2d 1429, 1433 (9th Cir.1989).
 
 
 23
 We need not resolve this question, however, because we believe that the statement's admission was harmless in any event. If we assume, without deciding, that Yi was in custody, we still may not reverse if the government proves beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. Collazo v. Estelle, 940 F.2d 411, 424 (9th Cir.1991) (en banc), cert. denied, 112 S.Ct. 870 (1992).
 
 
 24
 In this case, Yi's admission to living in apartment 1704 played an insignificant role at trial. Komine had already identified Yi as the apartment's occupant when he announced her arrival to the officers securing the premises. Thomas testified that she opened the door with a key. Viewed in the context of all the competent evidence of possession, we conclude that the admission of Yi's statement was harmless beyond a reasonable doubt. See United States v. Woods, 720 F.2d 1022, 1031 (9th Cir.1983) (failure to administer Miranda warnings held harmless in light of competent evidence of guilt).
 
 2. Statements to DEA Agents
 
 25
 Yi further maintains that the district court erred in admitting her confession to the DEA agents. She contends that the agents engaged in coercive tactics, extracted statements while she was suffering from the effects of methamphetamines, and precluded her attorney from contacting her.
 
 
 26
 The initial inquiry in any waiver case is whether the authorities engaged in coercive activity. Colorado v. Connelly, 479 U.S. 157, 167 (1986). "We review de novo the court's conclusion that the confession was voluntary because Connelly's focus on the constitutional acceptability of the government conduct rather than merely on the defendant's state of mind at the time of the confession 'requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles....' " United States v. Wolf, 813 F.2d 970, 974 (9th Cir.1987) ( quoting United States v. McConney, 728 F.2d 1195, 1202 (9th Cir.) (en banc), cert. denied, 469 U.S. 824 (1984)). If state coercion is shown, the personal characteristics of a defendant become relevant. See Derrick v. Peterson, 924 F.2d 813, 818 (9th Cir.1990), cert. denied, 112 S.Ct. 161 (1991); United States v. Rohrbach, 813 F.2d 142, 144 (8th Cir.), cert. denied, 482 U.S. 909 (1987).
 
 
 27
 Yi first argues that the police engaged in coercive tactics which rendered her statements involuntary. The district court assumed that the agents informed her of the possibility of a thirty-one year prison term in the course of their "good guy/bad guy" interrogation. It made no findings, however, with respect to the alleged threat to arrest Yi's mother and brother. Consequently, we cannot tell whether the court credited Yi's statements concerning these threats. The district court did make clear, however, that Yi was not coerced. It pointed out that Yi volunteered some information, answered some questions, and refused to answer others.
 
 
 28
 On the record before us, we cannot say that the district court erred. Even if we assume that the threats were made, the evidence sufficiently supports the district court's ultimate conclusion and precludes us from reversing. If we alternatively assume that no threats occurred, we find that the court made a permissible credibility determination that defeats Yi's claim. See Wolf, 813 F.2d at 975 (upholding voluntariness conclusion and noting that the trial court implicitly found that no threat occurred); Rohrbach, 813 F.2d at 145 (district court's finding of no coercion implicitly rejected claim that drug dependency and psychosis caused defendant's will to be overborne).
 
 
 29
 The district court also rejected Yi's claims about being under the influence of methamphetamines during the second arrest. Instead, it chose to rely on Agent John Madinger's opinion that she was sober. Nothing in the record suggests that this finding was clearly erroneous. See Wolf, 813 F.2d at 975.
 
 
 30
 We turn now to the government's alleged effort to preclude Yi from consulting her attorney. On the day of this interrogation, Yi's attorney contacted the Assistant United States Attorney handling the case to discuss federal prosecution. At the time, the latter did not know about the DEA's plans to arrest Yi. Yi now contends that the DEA's failure to inform her of this contact rendered her confession involuntary.
 
 
 31
 This contention is untenable in light of Moran v. Burbine, 475 U.S. 412 (1986). Even if we assume that the DEA agents were aware of the conversation, the failure to inform Yi is relevant only if it deprived her of knowledge essential to her ability to understand the nature of her rights and the consequences of abandoning them. Id. at 424. According to the record, Yi said she understood her rights and had no questions about them. She even declined a later offer to contact her attorney. Moreover, the district court was satisfied with her command of English during the hearing. We therefore hold that this waiver was valid. See id.
 
 D. Motion to Excuse Juror
 
 32
 At trial, Yi sought to exclude Patricia Fukuji from the jury on the ground of bias. This challenge came after Fukuji recognized Officer Thomas and notified the district judge that she and the officer's mother were cousins. Fukuji had not disclosed this relationship during voir dire.
 
 
 33
 In determining whether the juror's failure to respond to a voir dire inquiry necessitates a new trial, we must consider whether: (1) Fukuji failed to answer honestly a material question, and (2) a correct response would have provided a valid basis for a challenge for cause. McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556 (1984). Although McDonough was a civil case, we have applied its standard to a criminal case. See United States v. Nickell, 883 F.2d 824, 827 (9th Cir.1989).
 
 
 34
 Although the question about relatives in law enforcement was material, Fukuji did not act dishonestly by failing to respond. The record indicates that the court did not read a list of witnesses, but rather inquired generally about any potential bias in favor of relatives. Once Fukuji realized her oversight, she demonstrated honesty by immediately volunteering the information. See United States v. O'Neill, 767 F.2d 780, 785 (11th Cir.1985) (juror demonstrated honesty by volunteering that he had friends in law enforcement). Under questioning, Fukuji stated that she rarely saw Thomas and that their relationship would not cause her to be a biased juror. The district judge found these answers credible, and determined that the relationship would not impair her ability to act impartially. Because the Supreme Court has emphasized the trial court's peculiar ability to assess demeanor, we defer to its assessment and uphold its decision. See Patton v. Yount, 467 U.S. 1025, 1038 (1984) (trial court's resolution of bias issue entitled to special deference).[3]
 
 E. Sentencing Challenges
 
 35
 Yi raises a variety of challenges to the sentence imposed for her crimes. She received a ten-year sentence for the first count, which runs concurrently with the seventy-eight month sentence on the second count. According to Yi, these sentences fail to account for her substantial assistance to authorities, acceptance of responsibility, and minimal role in the crimes. We reject these contentions and uphold the sentences.
 
 1. Count One
 
 36
 On the first count, Yi received the minimum sentence allowable under the statute. See 21 U.S.C. § 841(b)(1)(A). The Sentencing Guidelines defer to statutory minimums, see U.S.S.G. § 5G1.1, comment., and district courts generally lack discretion to depart downward from them. United States v. Contreras, 895 F.2d 1241, 1243 (9th Cir.1990). Congress, however, has granted limited authority to impose a lesser sentence:
 
 
 37
 Upon motion of the Government, the court shall have authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.
 
 
 38
 18 U.S.C. § 3553(e).
 
 
 39
 In United States v. Sharp, we said that this provision provides the only avenue for reducing the sentence below the statutory minimum. 883 F.2d 829, 831 (9th Cir.1989); see also United States v. Williams, 939 F.2d 721, 726 n. 6 (9th Cir.1991) (reaching same conclusion). The Sentencing Guidelines are in accord. Section 5K1.1,[4] the provision dealing with substantial assistance, is the only provision allowing a downward departure from a statutorily required minimum sentence. See U.S.S.G. § 5K1.1. All other sections in part K address departures from the Sentencing Guidelines. See §§ 5K2.0-5K2.16.
 
 
 40
 At sentencing, the district court recognized that the government had not filed the motion required to trigger section 5K1.1. We have held that a motion by the government is a prerequisite to departure under this section. United States v. Ayarza, 874 F.2d 647, 653 (9th Cir.1989), cert. denied, 493 U.S. 1047 (1990). More recently, the Supreme Court ruled that the provision gives the prosecutor a power, not a duty, to file a substantial assistance motion. Wade v. United States, 112 S.Ct. 1840, 1843 (1992). Departure may be appropriate, however, if the government's failure to make the motion is unconstitutionally motivated. Id. at 1843-44. Similarly, a district court may depart if the government's "refusal to move was not rationally related to any legitimate Government end." Id. at 1844.
 
 
 41
 In this case, the district court did not find that the prosecution's action was irrational or inspired by an unconstitutional motivation. Indeed, Yi's allegations of substantial assistance are belied by the record. Although she did make a few statements concerning other drug offenders, the prosecution points out that the information was incomplete and only pertained to individuals already under investigation.
 
 
 42
 Yi also contends that she was entitled to an evidentiary hearing on these matters. Her mere allegations do not entitle her to either a hearing or a remedy. See id. Moreover, Yi already has received ample opportunity to rebut allegations in the presentence report. We therefore conclude that Yi has failed to meet the substantial threshold showing needed for an evidentiary hearing and remedy. See id. at 1843-44; United States v. Baker, 894 F.2d 1083, 1085 (9th Cir.1990).
 
 
 43
 This analysis also has implications for Yi's claims under U.S.S.G. §§ 3E1.1 and 3B1.2. Both sections provide only for reduction in offense levels. Because section 3553(e) provides the sole avenue for reduction of her statutorily mandated sentence, we cannot reduce her term pursuant to these provisions. See Sharp, 883 F.2d at 831.
 
 2. Count Two
 
 44
 Although we cannot reduce Yi's sentence under the first count, we still must consider reduction of her sentence for the second count. See United States v. De Bright, 730 F.2d 1255, 1258-59 (9th Cir.1984) (en banc) (review required despite concurrent sentence).
 
 
 45
 Yi contends that her confession reflected acceptance of responsibility for her acts and thus entitled her to a two-level reduction under U.S.S.G. § 3E1.1.[5] The district judge's determination is entitled to great deference, U.S.S.G. § 3E1.1, comment. (n. 5), and we reverse only for clear error. United States v. Gonzalez, 897 F.2d 1018, 1019 (9th Cir.1990).
 
 
 46
 In this case, Yi continuously raised issues of factual guilt. See U.S.S.G. § 3E1.1 comment (n. 2). During her interrogation by the DEA agents, Yi claimed that the drugs in apartment 1704 belonged to Kyun Kim and denied any possessory interest of her own. According to the district judge, Yi's attitude in court also did not communicate acceptance of responsibility. After trial, Yi refused to discuss her convictions with the probation officer compiling her presentence report. She ultimately did admit to her crimes, but only when the court was about to impose sentence. Accordingly, the district court did not clearly err by refusing to reduce the base offense level. See United States v. Sanchez, 908 F.2d 1443, 1450-51 (9th Cir.1990) (finding no sincere contrition because defendants denied knowledge of drug conspiracy and persistently claimed they were mere couriers); Gonzalez, 897 F.2d at 1020 (basing decision on defendant's conduct at trial, not on his decision to go to trial).
 
 
 47
 Yi further contends that her minimal participation warranted a four point reduction under U.S.S.G. § 3B1.2.[6] We review for clear error. United States v. Gillock, 886 F.2d 220, 222 (9th Cir.1989) (per curiam). Application Note 2 explains that the adjustment is appropriate for someone
 
 
 48
 who played no other role in a very large smuggling operation than to offload part of a single marihuana shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs.
 
 
 49
 U.S.S.G. § 3B1.2, comment. (n. 2).
 
 
 50
 In this case, a search of Yi's purse revealed a large quantity of cash and 13.86 grams of crystal methamphetamine. Special Agent Gregory Demmink testified that this drug typically is distributed in increments of 1/10 of a gram. We therefore cannot say that the district court clearly erred by refusing to reduce Yi's sentence. See Gillock, 886 F.2d at 222.
 
 
 51
 With respect to the section 5K1.1 claim, we uphold the district court's refusal to depart for reasons already discussed. Accordingly, we uphold the sentences imposed as to both counts.
 
 
 52
 The judgment of the district court is AFFIRMED.
 
 REINHARDT, Judge, dissenting:
 
 53
 Reluctantly, I dissent from the majority's disposition affirming Yi's conviction. This case presents several difficult questions and the majority deals with them exceedingly well. In only one respect do I disagree with the majority's analysis. I believe a remand is required because the district judge failed to make essential factual findings and place them on the record as Fed.R.Crim.P. 12(e) mandates. See United States v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir.1991). Circuit precedent leaves us no alternative. Id. As the majority notes, the district court neglected to determine whether the police threatened to arrest Yi's mother and brother if she did not confess to the DEA personnel. Without explicit factual findings as to the police conduct involved, we cannot adequately review the district court's ultimate conclusion that Yi's statements were voluntary under Colorado v. Connelly, 479 U.S. 157, 167 (1986).
 
 
 54
 I believe that we are obligated to remand for compliance with the dictates of Fed.R.Crim.P. 12(e) and Prieto-Villa.
 
 
 55
 Based on the defendant's role in the offense, decrease the offense level as follows:
 
 
 56
 (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 The district court also suppressed the contents of a purse seized during Yi's second arrest
 
 
 [2]
 See Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980) (interrogation means either express questioning or a functional equivalent that is reasonably likely to elicit an incriminating response)
 
 
 [3]
 At oral argument, Yi's counsel suggested that the officers had conspired to evade the Jencks Act by refraining from making contemporaneous notes. Counsel offered no authority in support of that argument, and it was not raised in the briefs. We decline to entertain it
 
 
 [4]
 Section 5K1.1 of the United States Sentencing Guidelines provides in part:
 Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
 
 
 [5]
 Section 3E1.1(a) of the Sentencing Guidelines provides in pertinent part:
 (a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense by 2 levels.
 
 
 [6]
 Section 3B1.2 of the Sentencing Guidelines provides in pertinent part: